Juan Canals González, demandante y apelado, *v.* Epifanio Vidal, Silverio V. Laguerra y Great American Indemnity Company, demandados y apelante la última.

Núm. 7342.—*Sometido:* Enero 21, 1938. *Resuelto:* Mayo 17, 1938.

*Juan Valldejuli Rodríguez,* abogado de la aplante; *García Méndez & García Méndez,* abogados del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Juan Canals González demandó a Epifanio Vidal, a Silverio V. Laguerra y a la Great American Indemnity Company en reclamación de $905.82 por daños y perjuicios.

Contestaron conjuntamente los demandados Vidal y Great American Indemnity Company negando los hechos de la demanda que podían perjudicarles y alegando varias defensas afirmativas. El otro demandado, Laguerra, no contestó, anotándose su rebeldía.

Celebrada la vista, la corte de distrito declaró probados los siguientes hechos:

"De toda la evidencia ofrecida por las partes, la corte estima probado que el demandante Juan Canals González y el demandado Epifanio Vidal son mayores de 21 años de edad y vecinos de Mayagüez, el primero propietario y el segundo comerciante; el codemandado Silverio V. Laguerra también mayor de 21 años, chófer y vecino de Mayagüez; y la codemandada Great American Indemnity una corporación organizada de acuerdo con las leyes de Nueva York, dedicada al negocio de seguros en Puerto Rico, y con oficina principal en San Juan; que en 25 de marzo de 1934 el demandado Epifanio Vidal era dueño del automóvil Buick núm. 8988, y que en el expresado día 25 de marzo de 1934, como a las 10 : 15 de la noche, en la carretera núm. 2, sitio conocido por 'Punta de Camuy', kilómetro 103, hectómetro 6, barrio Yeguada de dicha población, el expresado automóvil era conducido por el demandado Silverio V. Laguerra, chófer con placa núm. 32,077, y al así conducirlo chocó dicho automóvil Buick con un *truck* marca Diamond, propiedad del demandante, modelo de 1933, tablilla HP–47, guiado por Vicente Hernández López, placa núm. 43,752, causando daños a dicho *truck*, consistentes en averías en la rueda derecha, un guardalodo, bonete, eje y el *chassis* que quedó

virado, y las sopandas, habiéndose gastado en la mano de obra y piezas que se emplearon para la reparación de dicho camión la suma de $225.82, cantidad que fué pagada por el demandante a la mercantil E. Solé & Cía. de San Juan, donde estuvo en reparación por unos diez y nueve días; que se trataba de un *truck* nuevo, cuyo valor era entre $2,050 y $2,150, y que a la fecha inmediata al accidente valdría como $150 menos, y que después de la reparación tendría un 20% o un 25% de depreciación del valor que tenía antes del accidente; que dicho accidente ocurrió con ocasión en que el *truck* del demandante, guiado por su chófer Vicente Hernández López iba en dirección hacia San Juan, habiéndose arrimado bien a su derecha, porque vió venir un carro en dirección de frente, o sea en dirección opuesta al *truck*; que el *truck* iba en segunda, y que de pronto se vió que por detrás de dicho *truck* venía a una velocidad muy grande el automóvil del demandado Epifanio Vidal, guiado por Silverio V. Laguerra, y al intentar dicho Silverio V. Laguerra pasar al *truck*, en el instante mismo en que cogía su derecha el automóvil que venía en dirección opuesta, dicho automóvil del demandado Epifanio Vidal chocó con el *truck* del demandante por el costado, produciéndole los daños que se han mencionado antes, estimando el Tribunal que no medió culpa ni negligencia en dicho accidente y que el mismo se debió exclusivamente a la culpa, negligencia y temeraria imprudencia de Silverio V. Laguerra, quien intentó pasársele al *truck* del demandante, cuando la derecha correspondía al otro automóvil que caminaba en dirección contraria, siendo dicha culpa y negligencia la causa única y exclusiva de dicho accidente.

"1.   .   .   .   .   .   .   .   .   .   .   .

"El demandante ofreció como evidencia la póliza de seguro a que la demanda se contrae, la que contiene un endoso (*omnibus clause*) que copiado a la letra dice así:

"'Endoso para asegurados adicionales—*Omnibus clause endorsement*—Por el presente queda entendido y convenido que el seguro provisto por esta póliza se extiende de tal modo que, en la misma manera y bajo las mismas condiciones en que amparà al nombrado Asegurado, amparará a cualquiera persona que opere, y/o cualquiera otra persona que esté montada en (exceptuando al *chauffeur* empleado del automóvil asegurado) y/o cualquiera otra persona, firma o corporación legalmente responsable de la operación de cualquiera de los automóviles descritos en las estipulaciones específicas, siempre que tal uso u operación sea legal y con el permiso del nombrado Asegurado, o, si el nombrado Asegurado fuere un individuo particular con el permiso de un adulto miembro de la familia del

nombrado Asegurado pero que no sea *chauffeur* ni sirviente doméstico, exceptuando que esta extensión del seguro no se aplicará, ni el seguro provisto amparará ningún garage público de automóviles, taller de reparación de automóviles, agencias de ventas de automóviles, ni a los propietarios, empleados, o agentes de los tales o de cualquiera como tales; *Disponiéndose, además,* que el seguro pagadero por motivo de esta póliza será aplicado por la compañía primero a la protección del nombrado Asegurado, y el sobrante, si lo hubiere, a la protección de otros con derecho al seguro bajo las estipulaciones y condiciones del Convenio General de Seguro y tal como el nombrado Asegurado disponga por escrito. Esta póliza queda en lo demás sujeta a todas sus estipulaciones. Este endoso es efectivo desde las 12: 00 M. Octubre 4, 1933. Adherido y formando parte de la Póliza Núm. M–221496, expedida por la Great American Indemnity Company, a nombre de Epifanio Vidal. Mayagüez, P. R., Great American Indemnity Company, Jesse S. Phillips, Presidente. Auto 3106A 2M11–31.'

"  .  .  .  .  .  .  .  .  .  .  .

"No estima probado la corte que el automóvil de Epifanio Vidal iba en negocios de éste y para su beneficio, pues aunque hubo evidencia de que Francisco Vidal y Epifanio Vidal son hermanos entre sí, trabajaban juntos y el carro de dicho Epifanio Vidal iba a buscar a Francisco Vidal que regresaba de Estados Unidos en viaje de negocios, no se trataba de un negocio personal de Epifanio Vidal ni de Francisco Vidal, por lo que estima el juzgador que no puede hacer pronunciamiento alguno en contra de dicho Epifanio Vidal.

"De toda la evidencia surge, sin embargo, que Silverio V. Laguerra guiaba el automóvil Buick de Epifanio Vidal, ya como chófer, como se admitió por todos los demandados, ya como persona especialmente designada por el demandado Epifanio Vidal para que condujera dicho automóvil en el viaje a San Juan para buscar a Francisco Vidal, hermano del demandado Epifanio Vidal. En otras palabras, el demandado Silverio V. Laguerra operaba el automóvil de referencia, hecho que le constaba al propio demandado Epifanio Vidal, que le dió $7 para los gastos de dicho viaje."

Estudia luego la corte la ley y la jurisprudencia aplicables y concluye que debe dictar sentencia absolviendo de la demanda al demandado Vidal, dueño del automóvil con el cual se causó el daño, por no viajar en él ni usarlo en su negocio, y condenando a los otros demandados Laguerra, que guiaba

el automóvil, y Great American Indemnity Company, que lo aseguró, a pagar solidariamente al demandante $625.82 en que tasó los daños y perjuicios que éste realmente sufriera por gastos de reparación de su *truck* y depreciación del mismo, con más las costas, gastos y honorarios de abogado. Laguerra fué además condenado separadamente a pagar al demandante $95 por la pérdida del uso de su *truck,* no siéndolo la compañía aseguradora por no cubrir su póliza esa responsabilidad.

Contra la sentencia dictada apeló la Great American Indemnity Company, señalando en su alegato cuatro errores cometidos a su juicio por la corte sentenciadora 1, al interpretar el "Omnibus Clause" de la póliza; 2, al declarar en forma dudosa, contraria a lo alegado, que Laguerra actuó bien como chófer de Vidal, dueño del carro, ya como persona especialmente designada por Vidal para conducir su automóvil; 3, al convertir la póliza de seguro de este caso, de responsabilidad pública, en póliza de vida; y, 4 al apreciar las alegaciones y la prueba.

La corte de distrito, pues, estimando probado que el demandado Vidal, dueño del carro, no viajaba en él cuando ocurrió el accidente, de acuerdo con la ley y la jurisprudencia que rigen en Puerto Rico, lo eximió de responsabilidad, y estimando probado de igual modo que cuando el accidente ocurrió el automóvil iba guiado por el demandado Laguerra, chófer del dueño, lo condenó, condenando también a la Great American, no obstante la exoneración de Vidal, por estimar que autorizado como estaba el chófer por el dueño del carro asegurado para guiarlo en el momento del accidente, la Great American era responsable de acuerdo con los términos de su póliza.

Conocemos la cláusula pertinente de la póliza. Protege "en la misma manera y bajo las mismas condiciones en que ampara al asegurado" a:

1, cualquiera persona que opere el auto asegurado;

2, cualquiera otra persona que esté montada en él, exceptuando al chófer-empleado del mismo;

ó, cualquiera otra persona, firma o corporación legalmente responsable de su operación, siempre que ésta sea legal y con permiso del asegurado, y si el asegurado fuere un individuo particular, con el permiso de cualquier miembro adulto de su familia que no sea chófer ni sirviente doméstico.

A nuestro juicio la corte sentenciadora interpretó correctamente la cláusula en cuestión, conocida generalmente con la designación de "omnibus clause". La jurisprudencia es abundantísima. En el tomo 72 A. L. R. 1375, comienza a anotarse la misma, precedida de la siguiente introducción:

"Independientemente de la cláusula general de seguros contenida en una póliza de automóviles, con frecuencia aparece, bien en la misma póliza o a manera de tirilla o endoso unido a la misma, una cláusula que trata, o tiene el efecto, de hacer que la protección ofrecida por la póliza se haga extensiva a cualquiera persona o personas que caigan dentro de determinado grupo. Ésta es la llamada cláusula 'omnibus'. A veces, aunque no tan frecuentemente, la cláusula en sí está redactada en tal forma que otorga esta clase de seguro, es decir, que crea responsabilidad y cubre no sólo al asegurado designado, sino también a cualquiera persona o personas que pertenezcan a determinado grupo; en tanto en cuanto sea extensiva a éstas, para los fines de la presente anotación, esa cláusula cae dentro de las llamadas 'omnibus'."

Las anotaciones terminan a la página 1437. A la 1382 se cita el caso de *Lahti* v. *Southwestern Automobile Ins. Co.*, 292 P. 527, 528, en el cual la Corte de Distrito de Apelaciones Primer Distrito, División 1, California, se expresó así:

"La persona designada como asegurada en la declaración núm. 1, es Margaret McMenamin. La contención del apelante es que la demandada no tuvo en mente ser responsable bajo su póliza a ninguna otra persona que no fuera Margaret McMenamin, o sea la persona designada en la declaración. La contención carece de mérito. En lenguaje claro e inequívoco la cláusula 'omnibus' de la póliza dispone que, en adición al asegurado designado en la misma, cualquiera persona que corra dentro del automóvil cubierto por la póliza, o que lo guíe, será considerada como que está incluída dentro del significado de la palabra 'asegurada'. William McMenamin caía dentro del grupo definido, por ser el conductor del vehículo, y siendo ello así,

la póliza otorgaba indemnización por sus actuaciones como un asegurado no mencionado, en igual sentido y efecto que si se le hubiera designado expresamente en ella. El hecho de que fué la intención del apelante conceder beneficios a otras personas en adición a la asegurada Margaret McMenamin, queda además evidenciado por la cláusula de la póliza que dispone que el seguro se aplicará primeramente a la protección del asegurado designado en la declaración, y el remanente, de haberlo, se dedicará a proteger a otras personas con derecho a indemnización. El resolver que la póliza cubría tan sólo la responsabilidad incurrida por la asegurada misma mientras el automóvil era guiado por un tercero con su consentimiento y que no cubría la responsabilidad de un tercero cuando la asegurada misma no era de por sí responsable, equivaldría a ignorar enteramente las disposiciones expresas de la cláusula 'omnibus'. Véanse *Ocean Accident & Guarantee Corp.* v. *Bear*, 220 Ala. 491, 125 So. 676; *Horn* v. *Commonwealth Co.*, 105 N. J. Law, 616, 147 A. 483; *Odden* v. *Union Indemnity Co.*, (Wash.) 286 P. 59.

"Los términos de la póliza son claros y explícitos y el significado palmario y libre de duda, y no necesita interpretación. La intención declarada en la póliza fué cubrir no sólo a la asegurada designada en la póliza sino también al grupo definido en la cláusula 'omnibus'.

"Debe confirmarse la sentencia y resolución apeladas."

La apelante insiste en que su póliza no es susceptible de ser interpretada como cubriendo la responsabilidad contraída por el chófer porque éste está excluído expresamente de las personas amparadas por el seguro.

Es cierto que lo está en los grupos dos y tres, pero de ello no puede deducirse que lo esté del primero que abarca a cualquiera persona que opere el automóvil asegurado, con el consentimiento del dueño o con el de cualquier miembro adulto de su familia, única limitación que luego se impone a la persona, cualquiera que ella sea, que maneje el automóvil.

Aquí se demandó al dueño, al chófer y a la compañía como responsables solidarios y se condenó al chófer y a la compañía, siendo ésta responsable porque garantizó a cualquiera otra persona además del dueño que operara el auto asegurado y el chófer yendo o no yendo el dueño dentro del carro está

claramente comprendido dentro de los términos "cualquiera persona" del primer grupo. Si la intención de la aseguradora hubiera sido excluirlo, lo hubiera hecho expresamente como lo hizo en seguida en los otros dos grupos.

No existe, pues, el primer error señalado. Tampoco el segundo que sostiene que la corte—contrario a lo alegado en la demanda—declaró en forma dudosa que Laguerra manejaba el automóvil asegurado bien como chófer del dueño, ya como persona especialmente designada por él para conducirlo.

Es cierto que en la demanda se alegó que el auto era conducido por Laguerra, chófer del dueño, en viaje de negocios de éste, y que la corte no estimó probado lo del viaje de negocios, pero es cierto también que durante el juicio quedó plenamente demostrado que Laguerra, chófer del dueño, guiaba el automóvil no sólo con la autorización si que por el encargo del dueño que lo mandó a buscar a San Juan a su hermano que regresaba de los Estados Unidos, dándole siete dólares para los gastos del viaje. Y bajo esas circunstancias la demanda puede considerarse enmendada, si fuere necesario, para conformarla a la prueba. Véase el caso de *Indemnity Ins. Co. of North America* v. *Forrest et al.,* de la Corte de Circuito de Apelaciones del Noveno Circuito reportado en 44 F. (2d) 465, 466, que es autoridad sobre este punto y también sobre el anterior que dilucidamos, esto es, sobre la responsabilidad de la compañía por los actos del chófer bajo los términos de la póliza. También el de *El Pueblo* v. *Sucesión Valdés,* 31 D.P.R. 223 y el de *Sucesión Franceschi* v. *González,* 42 D.P.R. 939, confirmado por la Corte de Circuito de Apelaciones del Primer Circuito en *Heirs of Franceschi* v. *González,* 62 F. (2d) 748, 751.

El tercer error o sea que la corte sentenciadora convirtió la póliza de seguro de que se trata, de responsabilidad pública, en póliza de vida, carece de tal modo de fundamento en relación con los hechos del caso, que basta enunciarlo para concluir que no existe.

El cuarto y último error comprende tres extremos, a saber: que la sentencia es contraria a las alegaciones, a derecho y a la evidencia practicada.

Los dos primeros han quedado ya resueltos al considerar y resolver los señalamientos segundo y primero. Con respecto al tercero, poco dice la apelante. Y es que poco o nada de peso puede decirse en verdad porque la evidencia sostiene ampliamente los hechos que la corte de distrito declaró probados y en los cuales basó su sentencia.

*Debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*