**HAWKEYE–SECURITY INS. CO.**
**v.**
**PRESBITERO & SONS, Inc., et al.**
**No. 10890.**

United States Court of Appeals
Seventh Circuit.
Jan. 14, 1954.

Paul A. LaRocque, Chicago, Ill., for appellant.

Frank J. Mackey, Jr., Joseph H. Taylor, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff brought suit in the District Court seeking to have declared void a policy of insurance issued by it to defendant Presbitero & Sons, Inc., and to be relieved from any liability under the same. The case was tried before the court without a jury. Plaintiff appeals from the judgment entered against it, contending that, in view of the fact that the corporation did not own a certain Chrysler automobile included in the policy under the terms of the latter, the misrepresentation as to ownership was such that the court should have cancelled the contract instead of holding it in full force and effect.

Plaintiff issued the policy to the corporation on November 28, 1950, insuring some nine automobiles, in addition to other insurance, against property damage incurred by third persons and against liability for bodily injury to third persons, arising out of the use of any automobile covered by the policy. The contract provided that the vehicles might be used for "Business and Pleasure and Commercial." It contained a declaration that the insured was the sole owner. Among the nine cars was a 1950 Chrysler purchased by Michael O.

Presbitero, the son of the President of the Corporation and an employee of that company, who used it, at least part of the time, in the business of the company, transporting workmen and materials to and from various construction jobs upon which the corporation was engaged. On or about March 19, 1951, while he was driving the Chrysler, it collided with another car driven by a third person who, as a consequence of the collision, claimed damages for bodily injury and brought suit therefor against the company and Michael O. Presbitero. Plaintiff declined to assume liability or to defend the suit brought, and instituted this action to have the policy declared void.

The court found amongst other facts the following. The Chrysler was included in the list of vehicles insured under the policy, at the request of the corporation, for the protection of the latter's interest. The company's president, who procured the insurance, had no knowledge of insurance rate classifications or of the basis for rate determinations used in the writing of such policies. No misrepresentation regarding ownership of the Chrysler was made with intent to deceive the insurer. The insured had an insurable interest in the Chrysler, in view of the fact that the coverage was extended to all vehicles listed therein, whether used for business or for pleasure purposes, so long as the actual use was with the permission of the named insured. Michael had operated the Chrysler both in the business of the company and for his own pleasure, with the permission of the insured. Any representation with respect to the ownership of the Chrysler was not material to the acceptance of the risk assumed with respect to bodily injury or property damage liability to third persons.

The court found also that the accident occurred on March 19, 1951; that plaintiff was immediately notified and, on the following day, took statements from both the Presbiteros, father and son, concerning the accident and the ownership of the automobile, receiving full disclosure of the interest of the son in the automobile; that, on March 22, 1951, the plaintiff had full knowledge of the ownership of the Chrysler and, with such knowledge, placed on the policy an endorsement effective April 2, 1951, increasing the coverage from $25,000 to $50,000 and from $50,000 to $100,000; that, early in April, 1951, Michael sold the Chrysler and purchased an Oldsmobile, whereupon the company issued to Michael a new policy covering the Oldsmobile effective as of April 25, 1951; that on April 26, 1951 plaintiff eliminated the Chrysler from coverage but retained as earned the portion of premium covering the period up to April 26, 1951. Thus there was uninterrupted coverage first of the Chrysler and then of the Oldsmobile.

The court concluded that the policy was not issued in contravention of any state statute; that plaintiff knew at the time the policy was issued that three of the vehicles were private cars and that the use to be made of them was not limited to commercial but covered also business and pleasure purposes; that the policy was not a fleet policy as defined by the statutes of Illinois; that plaintiff insurer, being in the business of writing insurance, was charged with knowledge of rate making procedures and the statutes applicable thereto, and was, in this respect, in a superior position to that of the insured; that the insurer had knowledge superior to that of the insured; that if plaintiff issued any policy in violation of the statute in this respect, such violation would not operate to invalidate the policy as to liability to third persons or defeat the rights of third party beneficiaries; that plaintiff had, by its action, taken with full knowledge of the fact with respect to ownership, waived any right to cancel because of misrepresentation, by interpreting the policy as extending coverage to the Chrysler.

An examination of the record discloses that the facts as found by the court are amply sustained by the evidence and that the real issue presented

to us is whether the alleged misrepresentation as to ownership by the insured, under the circumstances of the case, was such as to require a declaration that the policy was void. This question of course must be decided in accord with the Illinois law. In a comparatively recent case, Mid-States Ins. Co v. Brandon, 340 Ill.App. 470, 92 N.E.2d 540, the facts were quite similar to those before us. There Chris G. Brandon procured a policy for automobile collision insurance representing himself to be the actual owner of a certain automobile. In fact, however, his minor son Chris L. Brandon was the owner. The insurer insisted that it had been released by the father's misrepresentation with respect to the title. The court commented, 340 Ill. App. at page 473, 92 N.E.2d at page 541: "Illinois Revised Statutes 1949, State Bar Ed., ch. 73, sec. 766 (11 Jones Ill. Stats.Ann. 66.829) provides that 'no such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.'" The court held that the representations made were not material to the risk assumed by the insurer and defined the difference between collision insurance intended to provide indemnity for automobile drivers against liability to third persons, and insurance for fire, theft or other damage to the owner, saying, 340 Ill. App. at pages 474–475, 92 N.E.2d at page 542, quoting from Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, part 1 as follows: "The character of the insurance is quite different from insurance, against injury or loss, of the property insured by fire, theft, collision, or the like, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable."

Whether the law of other states is in accord with this decision or whether, if the question were open to us, we would decide otherwise is beyond the point; we are bound by the Illinois law. From this case it is apparent that the courts of Illinois recognize a distinction between policies for liability coverage and those covering fire, theft or other damage to the driver's automobile. Thus it is apparent that, though a false declaration by the policy-holder which materially affects the insurer's risk for fire or theft and similar losses or damage to the insured's vehicle would be material and would ordinarily release the insurer from its obligation, a policy providing that the car may be used in the business and also for pleasure and that it may be used by the agent and employees of the company, in either capacity, that is, for pleasure or for business, the essential element in the insurance contract is the use of the car and not the title thereto. So long as the use is within the terms of the policy, the fact that the owner is an employee of the corporation, and not the corporation itself does not materially affect the risk or hazard assumed by the insurer against liability to third persons for injuries resulting from the use of a car included in the policy. Similarly, the Supreme Court of Illinois in Kostecki v. Zaffina, 384 Ill. 192, 51 N.E.2d 152, 149 A.L.R. 525, held that misdescription of an automobile in the policy does not avoid it.

The ownership is not the decisive fact. The use is all important, and, inasmuch as the insurer has placed no qualification upon the insured's right to permit any employee or whomsoever he wishes to use and operate the cars, the essential elements constituting the liability exist. This is obvious when we observe that if the corporation had held

full title, the insurer would be under the same liability, inasmuch as the insured's employee, Michael O. Presbitero, was, by the policy authorized to operate and use the car.

The Illinois court, in the Brandon case, cited with approval Ocean Accident & Guarantee Corp. v. Bear, 220 Ala. 491, 125 So. 676. There, too, the essential question was whether the plaintiff was insured under the omnibus clause, in view of the fact that an employee owned the car of which the corporation had stated that it was the owner. That court said, 125 So. at pages 679–680: "But an automobile liability insurance policy does not cover property loss on the part of the insured owner, as in fire or theft policies. 'Legal liability' for injury to persons or property of others resulting from the 'ownership, maintenance or use' of the car is coverage of this policy. That is the risk or hazard which is assumed by the insurance carrier, and for which the 'assured' is indemnified. *If the 'assured' has such abiding interest in the use of the car in his business that he may become legally liable to others for injuries resulting from its operation, he has a beneficial interest, an insurable interest.* 36 C.J. 1059; Employers' Liability Assur. Corp. v. Merrill, 155 Mass. 404, 29 N.E. 529. * * * It extends protection to one 'permitted' to use the car, although the 'assured' may not be liable for the accident under the doctrine of *respondeat superior."* (Emphasis supplied.) By approval of the Alabama case the Illinois court adopted its reasoning. We might observe in passing that the Alabama court, in the decision cited, refused to follow Whitney v. Employers' Indemnity Corp., 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495, on which plaintiff now relies. Consequently we must assume that the Illinois court, by following the Alabama case, likewise refused to adopt the reasoning of the Iowa case. In the latter the court did not see fit to observe the distinction between an owner's property damage and liability coverage to third persons, which we think is quite clear. Consequently we are of the opinion that the trial court correctly ruled that the alleged misrepresentation was not material to the acceptance of the risk or the hazard assumed by the insurer. Under the facts of this case, the Illinois statute, itself, would seem to be conclusive. We have noted its language quoted in the Brandon case.

We think there is another compelling answer to plaintiff's contentions for, as the District Court pointed out, after knowledge of the actual ownership of the automobile had been fully disclosed, the company recognized the policy as being in full force, by doubling the amount of coverage. That it recognized Michael O. as a proper insurance risk is disclosed by the fact that it later insured him against liability on another car. The circumstances surrounding this transaction are readily apparent in the record and are expressed in the trial court's findings, who concluded that the fact that, after knowledge of the true facts, the company treated the policy as in full force and effect constituted an interpretation of the policy on its part as including the car here involved. That this amounted to a waiver upon the part of the company is apparent from the Illinois authorities.

Thus in Adam v. Columbian Nat. Life Ins. Co., 218 Ill.App. 54, 64–69, the court used this language: "There is a distinct difference between an implied waiver * * * and an estoppel *in pais*. There are, of course, different kinds of waivers. In some of them all the elements of an estoppel are present * * *. But there may be a waiver of a condition in an insurance policy which waiver does not contain all the elements of an estoppel. Beggs v. Supreme Council, 146 Ill. App. 168. * * * It is generally true that the term 'waiver,' besides implying an intention on the part of the company * * * to relinquish a right, which is not necessarily present in an estoppel, refers only to the act or the consequence of the act of the company,—the party against whom the waiver is sought to be enforced,—regardless of the attitude assumed by the other party (the assured)

whereas estoppel *in pais* arises where, by the fault of one party (the company) another (the assured) has been induced, ignorantly or innocently, to change his position for the worse, in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled (the company) to assert the right in controversy. 29 Am. & Eng. Encyc. of Law, 1092. In other words, a waiver may depend upon what one himself intends to do, without regard to its effect upon the one claiming the waiver, while an estoppel necessarily depends upon what he causes the one claiming the estoppel to do or not to do, in reliance upon his course. There is a clear distinction between that kind of a waiver and an estoppel, and where such a waiver is made out, the defendant will be held liable although the elements of an estoppel are not shown to be present. There are numerous examples of it in the decisions of our courts in insurance cases. (Citing and discussing cases.) * * * the doctrine of waiver, *as applied to such a case as this* (which is entirely different from those just referred to), is *not* that of estoppel *in pais.*" To the same effect is Cox v. American Ins. Co., 184 Ill.App. 419, a fire insurance case, where the acts of the company which the court construed as a waiver on its part to declare a forfeiture of the policy took place after the loss had occurred, of which latter fact the company had full knowledge. The court said, 184 Ill.App. at page 424: "A waiver of a breach of a condition of a policy, does not require the company to do anything to the disadvantage of the assured." See also Illinois Life Ass'n v. Wells, 200 Ill. 445, 65 N.E. 1072. And in Chicago Life Ins. Co. v. Warner, 80 Ill. 410, the circumstances which the court held amounted to a waiver on the part of the company of its right to declare a forfeiture of the policy, took place after the loss had occurred. Indeed we understand the law to be quite general in all jurisdictions that if an insurance company treats a policy as valid, after breach of the conditions thereof by the insured, or with knowledge of the facts, recognizes, by its own unequivocal acts or declarations, the policy as subsisting, it thereby waives the prior forfeiture or cause therefor.

The findings of the trial court are amply sustained by the evidence and the conclusions of law drawn therefrom we think are sound. The judgment is affirmed.