(125 So. 676)

## OCEAN ACCIDENT & GUARANTEE COR-PORATION, Limited, v. BEAR.
### (3 Div. 870.)

Supreme Court of Alabama. Oct. 10, 1929.

Rehearing Denied Jan. 25, 1930.

J. P. Mudd and Coleman, Coleman, Spain & Stewart, all of Birmingham, for appellant.

Rushton, Crenshaw & Rushton and Hill, Hill, Whiting, Thomas & Rives, all of Montgomery, for appellee.

BOULDIN, J. (after stating the case as above). The primary question involved is whether Lawrence Bear, Jr., is within the protection of the policy as an "additional assured," under clause 6, commonly known as the "omnibus clause." As appears from carefully prepared briefs and further research on our part, rather few cases construing such provisions in accident liability policies shed light on the issue presented by the facts of this case.

In our own case of Metropolitan Casualty Ins. Co. of New York v. Blue, 121 So. 25,[1] one operating the car by permission of the wife of the assured, an adult member of the family, was awarded protection under a similar clause. Bro v. Standard Accident Ins. Co., 194 Wis. 293, 215 N. W. 431, presented purely a question of fact as to whether the operator had "permission," express or implied, to use the car. Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A. L. R. 500, presented a case of special permission to use the

---

[1] 219 Ala. 37.

car on a 'stated mission of the operator. The issue was whether he had so departed or deviated from the permitted use as to take him without the protection of the policy. Quite a liberal construction was given the omnibus clause in favor of the "additional assured." Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N. E. 107, was the case of an employee, authorized to drive a truck in a specific business, going on a personal mission of his own. Held not entitled to protection.

We have no occasion here to consider what deviation from the permitted use will take the user without the protection of the policy. The above cases, however, construe the omnibus clause to cover the operator by special permission as matter of accommodation, or the continuous operator under contractual relations with the assured.

Appellant strongly relies upon Whitney v. Employers' Indemnity Corp., 200 Iowa, 25, 202 N. W. 236, 41 A. L. R. 495. In that case one Fenlon was working for a grocery company, the owner of a Ford car. A conditional sale of the car was made to Fenlon, payment to be made in monthly installments, to be retained from commissions due him. Later Fenlon severed his relation with the company, and was permitted to take the car on promise to complete his monthly payments. At the time of the conditional sale the company carried a liability policy. That policy expired after Fenlon severed his relation. A new policy was taken out by the company, with an additional assured clause similar to that before us. Four days later, while Fenlon was operating the car, an accident occurred, resulting in injury to Whitney's car. Suit for damages was brought against the grocery company and Fenlon, resulting in a judgment in favor of the grocery company and a judgment against Fenlon. Whitney then sued on the policy, under a clause by which the indemnity to Fenlon inured to Whitney. Said the court:

"Plaintiff says that Fenlon was operating the car with the consent, either expressed or implied, of the grocery company. To successfully maintain this contention the grocery company's relation to said car must be shown to be such that they were in a position to give their consent. In other words, if Fenlon absolutely owned the car the consent, or want of consent, on the part of the grocery company, would have nothing to do with this lawsuit. * * * The final analysis of the whole case must turn upon the question of who was the owner of the car at the time the policy of insurance sued on herein was issued, and at the time of the accident, which was four days later. If the grocery company was the owner of the car at the time, it could have given the consent required by the omnibus clause (L). If it was not the owner, then of course the omnibus clause (L) would not operate, and there would be no basis for the operation of clause (e)."

The court then declares that, in case of destruction or injury of the Ford car, the loss would have fallen on Fenlon, and not on the grocery company, and says: "It is our conclusion that at the time in controversy herein the grocery company was not the owner of the car within the meaning of the first paragraph hereinbefore referred to, and that, not being the owner of the car, it was not in a position to give the consent provided for in paragraph (L), the omnibus clause."

In that case the "assured," at the time the policy was taken out and at the time of the accident, had no right to the use of the car in its business, no beneficial ownership by reason of such right of user, no relation with Fenlon or the car which could render the "assured" liable for Fenlon's negligence in operation.

It is the law that liability insurance, like other forms of insurance, must be supported by an insurable interest in the insured. An insurable interest, even in policies involving property loss, is widely different from a "sole and unconditional ownership," sometimes made a warranty in fire policies and the like. " 'Whoever * * * may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject-matter of insurance, whether that advantage inures to him personally or as the representative of the rights or interests of another, has an insurable interest.' Continental Fire Ins. Co. v. Brooks, 131 Ala. 614, 618, 30 So. 876, 877; Commercial Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 So. 222, 60 Am. Rep. 162." American Ins. Co. v. Newberry, 215 Ala. 587, 112 So. 195, 196; May on Insurance, § 80. Even a warranty stipulating for "sole and unconditional ownership" is not breached by the want of the naked legal title. If the insured alone suffers the loss insured against, this is sufficient. Gunn v. Palatine Ins. Co., 217 Ala. 89, 114 So. 690.

But an automobile liability insurance policy does not cover property loss on the part of the insured owner, as in fire or theft policies. "Legal liability" for injury to persons or property of others resulting from the "ownership, maintenance or use" of the car is coverage of this policy. That is the risk or hazard which is assumed by the insurance carrier, and for which the "assured" is indemnified.

If the "assured" has such abiding interest in the use of the car in his business that he may become legally liable to others for injuries resulting from its operation, he has a beneficial interest, an insurable interest. 36 C. J. 1059; Employers' Liability Ass'n Corp. v. Merrill, 155 Mass. 404, 29 N. E. 529.

The "additional assured" or omnibus clause covers a group of persons who may or may not have an insurable interest at the time the policy is written. If within the defined group, it is sufficient that at the time of the accident such person is in position to become legally liable for injury to others. Construing the omnibus clause according to well-known rules, the term "permission" is manifestly used in an inclusive sense. It extends protection to one "permitted" to use the car, although the "assured" may not be liable for the accident under the doctrine of respondeat superior. It protects members of the family of the assured, permitted to use the car, if within the age limit prescribed, and extends like protection to any person given permission to use it by an adult member of the family other than a chauffeur or domestic servant. Not that the chauffeur or domestic servant may not be protected when using the car in the service of the assured, or when given permission to use it for personal ends by the assured, or an adult member of the family. The chauffeur or domestic servant cannot extend such permission to others.

By the last sentence in the omnibus provision it is stipulated that it shall not cover "any automobile leased or hired" or "used for carrying passengers for compensation." This exclusion is to safeguard against a possible construction which, without it, might be given the broad language of such provision. The limited terms of the exclusion clause indicate that cases more obviously covered by the omnibus clause are not excluded. We cannot think the term "permission is restricted at all to those having a mere casual permission, or to those receiving permission to use the car as a matter of personal favor or accommodation.

The assured is naturally much more concerned in the protection of his men, those using the car in his business under contractual relations, and equally so when, by the same contractual relations, his agents and employees have the privilege of using the car for their personal ends, when not employed in the business of the assured. This, in our opinion, is among the chief considerations leading to the omnibus clause, one that gives the policy an element of selling value.

Applying these rules to the case in hand, we find the record fully supports the findings of fact by the trial court, which have been set out in the statement of the case. The Buick was bought for use in the business of the assured, Anderson Lumber Company, to be used by Lawrence Bear, their employee, in such business, and, when not so used, was subject to his personal use. The company furnished the oil and gas. It had a beneficial ownership, an insurable interest, within the law of this contract. It had some rightful say as to when Lawrence should use it for personal purposes.

The suggestion is made that a car in a collision is likely to be injured; that the owner, who may suffer a property loss, will be more cautious in giving permission to use it, and therefore the insurance carrier's risk is limited to such ownership. We may suggest this argument would be without force where the operator at the time of the collision stands to suffer a property loss himself. But, granting the premises, the assured here could suffer a property loss in this car, a car devoted to its business.

It was devoted to the same use as the Dodge on which the policy was first issued. The agent of the insured, who transferred the policy to the Buick, knew the Dodge car as the Lawrence Bear Dodge. It seems obvious that Lawrence Bear would have been protected under this policy while operating the Dodge, either in the business of the company or for his own purposes. That the legal title to the Buick was in him is not of importance. It was Lawrence's turn to buy a car for the use of the company and himself.

The company may readily have incurred a liability while it was being used in the prosecution of its business. It was but a dutiful recognition of the interest of the company in the car, and the company's liability for its use to continue the policy to the company as the assured. That Lawrence thus designated the company as the assured and the owner in no way affected his rights as an additional insured. He is protected as such, whether using the car in the business of the company or for his private purposes.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### On Rehearing.

PER CURIAM. Rehearing overruled.

SAYRE, THOMAS, BROWN, and FOSTER, JJ., concur.

ANDERSON, C. J., and GARDNER, J. (dissenting). The recovery is rested upon the "omnibus clause" of the policy wherein the Anderson Lumber Company is the insured. As a basis of liability the use of the car must have been with the permission of the Anderson Lumber Company, and such company must have been in position to give such consent. As held in Whitney v. Employers' Indemnity Corporation, 200 Iowa, 25, 202 N. W. 236, 239, 41 A. L. R. 495, that question must turn upon ownership of the car at the time of the accident, the court saying: "If it was not the owner, then, of course, the omnibus clause (L) would not operate, and there would be no basis for the operation of clause." Undisputedly Bear had the sole and absolute title to the car. Such being the case, the Anderson Lumber Company was in no position to give permission to plaintiff to use his own car-

on a pleasure trip of his own. The Whitney Case we consider in principle directly applicable. We think that decision sound and should be here followed.

Upon reconsideration we find ourselves unable to agree to the majority view, and therefore respectfully dissent.