81 So.2d 331

**Harry G. BROWN et al.**

v.

**George OLDHAM et al.**

**8 Div. 745.**

Supreme Court of Alabama

May 12, 1955.

Rehearing Denied June 23, 1955.

Bradshaw, Barnett & Haltom, E. B. Haltom, Jr., Florence, for appellants.

Potts & Young, Florence, for appellees.

**LAWSON, Justice.**

The purpose of the bill is to enforce the statutory lien given by § 37, Title 33, Code 1940, to "every mechanic, person, firm, or corporation who shall do or perform any work, or labor upon, or furnish any material, fixture, engine, boiler, or machinery for any building or improvement on land, or for repairing, altering, or beautifying the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, architect, trustee, contractor, or subcontractor," etc.

As a basis for relief, the bill as amended avers:

"That the complainants, George Oldham and M. O. Bearden, partners doing business as Oldham and Bearden Contracting Company, performed labor in and about the painting of the dwelling house located upon the above described property under a contract with said Harry G. Brown and Pattye O. Brown by and through their agent or architect, who had authority to make such contract, or had apparent authority to make such contract and the same was ratified by Respondents, the value of which said labor amounted to the sum of Five Hundred Ninety-Five ($595.00) Dollars. That said labor was performed during the months of July, August, and September, 1952, and the last item of work or labor was performed by said complainants on about the 29th day of August, 1952, and the entire indebtedness of $595.00 became due and payable on about the 29th day of August, 1952. That the said George Oldham and M. O. Bearden, partners doing business as Oldham and Bearden Contracting Company, claim a lien on the above described property and the dwelling house situated upon said property for the indebtedness owing to them by the said Harry G. Brown and Pattye O. Brown for the work performed upon * * * the dwelling on the property hereinabove mentioned. That on the 29th day of September, 1952, the complainants filed a verified statement of said lien in the office of the Judge of Probate of Lauderdale County, Alabama, a copy of which statement is hereto attached to this bill of complaint and made a part hereof and marked as Exhibit 'A'.

"Complainants allege that they have a lien on the above described property to secure the amount of indebtedness owing to them by the said Harry G. Brown and Pattye O. Brown as herein

above alleged, which indebtedness is unpaid and that they are entitled to have the above described property sold to satisfy said lien."

After demurrer was overruled, the case was tried on the issues presented by the bill as amended and the answer of the respondents. The result of that trial was the rendition of a decree against the respondents in the sum of $595 with interest. This amount was made a lien upon the dwelling, the land upon which it is situated and one acre of land surrounding the dwelling, which had not been constructed on land situated in a city, town or village. § 33, Title 37, supra. Such property was ordered sold for the satisfaction of the lien so established. From that decree the respondents have appealed to this court.

■ Some of the grounds of the demurrer challenge the sufficiency of the bill as amended on the ground that the terms of the contract were not sufficiently stated. Respondents argue here that the action of the trial court in overruling those grounds of demurrer was error, citing Evans v. Town of Muscle Shoals, 235 Ala. 325, 179 So. 228, and other authorities of like import. It is sufficient to differentiate the cases cited from the one at bar to observe that the complaints in those cases were in special assumpsit for breach of contract, while here the complainants predicate their right to recover on the basis of a debt alleged to be due for work and labor performed at respondents' instance, under circumstances which if proven would entitle them to a lien under the statute, § 33, Title 37, Code 1940. Under the rule of our cases, the trial court did not err in overruling the grounds of demurrer presently under consideration, although the entire contract is not set out in or made an exhibit to the bill. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90; Roobin v. Grindle, 219 Ala. 417, 122 So. 408; Buettner Bros. v. Good Hope Missionary Baptist Church, 245 Ala. 553, 18 So.2d 75; Burge v. Morgan, 257 Ala. 558, 59 So.2d 795; Skelton v. Seale Lumber Co., Inc., 260 Ala. 179, 69 So.2d 288.

■ Under our holdings in Murray v. Bessemer Lumber Co., 213 Ala. 232, 104 So. 649, and Thomasson v. Benson Hardware Co., 222 Ala. 176, 131 So. 563, the trial court should have sustained respondent's demurrer, as one of the grounds took the point that the bill as amended failed to name the architect or agent that the complainants claimed acted for respondents in the making of the contract. But the error in overruling that ground of demurrer will not work a reversal on this appeal, for such error was without injury, as the evidence showed without conflict that it was respondents' architect, Malcolm Smith, whom the complainants claim acted for respondents in the making of the alleged contract. Downer v. First Nat. Bank in Fort Payne, 231 Ala. 523, 165 So. 758; Ballenger v. Ballenger, 208 Ala. 147, 94 So. 127; McConnell v. Worns, 102 Ala. 587, 14 So. 849. We think it well to point out, however, that the holding in the Murray and Thomasson cases, supra, does not apply to tort cases other than those framed under the State Employers' Liability Act. Foreman v. Dorsey Trailers, Inc., 256 Ala. 253, 54 So.2d 499, and cases there cited and discussed.

■ The record before us presents no question for review concerning the timely filing of the suit by complainants, inasmuch as that question is not raised by demurrer or by plea. See Jefferson County Savings Bank v. Ben F. Barbour Plumbing & Electric Co., 191 Ala. 238, 68 So. 43.

This bill was not filed to enforce a lien to the extent of any unpaid balance due a contractor.

The contention of complainants below, the appellees here, is stated in the following language quoted from brief filed here in their behalf: "Appellees contend that they were original contractors as to the painting of Appellant's dwelling, and that the painting was done under a contract, express or implied with the owners by and through their agent or architect, Malcolm Smith. Appellees. admit that in order to prevail in this cause, it was incumbent upon them to establish a contract, express or implied, with the owners or their architect or there

must have been an effectual ratification of such contract."

The final decree of the trial court is based on its conclusions from the evidence taken ore tenus that: "* * * at the time complainants entered into the contract and performed the work, respondents were the owners of the property described in the bill of complaint and that the contract was entered into with complainants by the architect, duly authorized agent of the respondents acting within the line and scope of his authority as such agent and that his acts were also later ratified in full by the respondents as to the employment of these complainants. * * *"

The respondents argue here that the conclusions of the trial court set out above are not supported by the evidence.

Appellant Dr. Harry G. Brown entered into a written contract with one W. D. Brooks on March 24, 1952, by the terms of which Brooks agreed to build a residence for the appellants, on a tract of land which they owned, for a price of approximately $18,000, the residence to be constructed according to plans and specifications prepared by a Florence architectural firm with which Malcolm Smith was associated. Article 6 of the contract reads in part as follows: "The Contract Documents: The General Conditions of the Contract the Specifications and the Drawings, together with this Agreement, form the Contract, and they are as fully a part of the Contract as if hereto attached or herein repeated * * *"

According to Section 6 of the Specifications the contractor, W. D. Brooks, was to furnish all labor, materials, equipment, and services for and incident to the painting and finishing of all surfaces throughout the entire house except the basement. In fact, the contract called for what is sometimes referred to in the trade as a "lock and key job."

In Article 36 of the "General Conditions of the Contract" it is provided, "Nothing contained in the Contract Documents shall create any contractual relation between any subcontractor and the owner," and Article 38 thereof reads in part:

"Art. 38. Architect's Status—The Architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the Contract Documents and when in special instances he is authorized by the owner so to act, and in such instances he shall, upon request, show the contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract.

"As the Architect is, in the first instance, the interpreter of the conditions of the Contract and the judge of its performance, he shall side neither with the Owner nor with the Contractor, but shall use his powers under the contract to enforce its faithful performance by both."

W. D. Brooks died on July 1, 1952, without having completed the residence. No painting had been done prior to his death, but a considerable part of the construction had been completed and Brooks had been paid by Dr. Brown approximately $8,000.

■ This building contract was one which the personal representative of the deceased contractor could properly complete. Gray v. Hawkins' Adm'x, 8 Ohio St. 449, 72 Am.Dec. 600; Vernon v. Harper, 79 Ohio St. 181, 86 N.E. 882, 20 L.R.A., N.S., 44; Shea v. Graves, 142 Or. 503, 19 P.2d 406; Burch v. J. D. Bush & Co., 181 N.C. 125, 106 S.E. 489.

Shortly after her husband's death Mrs. W. D. Brooks, who was administratrix of his estate, decided that, in her official capacity, she would undertake the completion of the Brown contract. This decision was made at a meeting attended by Mrs. Brooks; Dr. Brown; Malcolm Smith, the supervising architect on the job; A. D. Cody, the foreman on the job, who had served in that capacity under W. D. Brooks; and one Earl Anderson. Anderson was a friend of the Brooks family and at one time was partner in a construction business with Brooks. Brooks had maintained his office in Anderson's hardware store and Mrs. Brooks con-

tinued to use that office after her husband's death.

In the latter part of August, 1952, Mrs. Brooks was forced to abandon her efforts to complete the contract, but before abandonment Dr. Brown paid to Mrs. Brooks in her representative capacity approximately $9,000. Thus, Dr. Brown paid a total of approximately $17,000 on the contract price of $18,000. After abandonment by Mrs. Brooks, the Browns were forced to complete the building by employing other persons and in so doing they expended more than the unpaid balance, which was approximately $1,000.

All of the work performed by appellees was done during the period of time when Mrs. Brooks was attempting to complete her husband's contract, one of the obligations of which was to paint the Brown's residence. They performed the work without ever discussing the matter of a contract or compensation with Mrs. Brooks or with the owners, the Browns.

Appellees had known Earl Anderson for some time, having done painting work for him. They went to his store on July 12, 1952, and were asked by Anderson if they were interested in submitting a bid for the painting of the Brown residence. Anderson had a copy of the plans and specifications, which he showed appellees, and admittedly they read Section 6 of the specifications which, as heretofore shown, provided for the general contractor to furnish the labor and paint for the painting of the residence. But appellees testified that Anderson told them that their bid was to be for labor only. Malcolm Smith, the supervising architect, previously had been to Anderson's hardware store and selected the brand and color of paint to be used.

After looking over the plans and specifications appellees submitted an oral bid to Anderson in an amount in excess of $600. Anderson then talked to Smith over the telephone concerning the bid. Anderson and Smith determined that the bid was too high. Appellees then submitted another oral bid to Anderson, the amount of which was $595. As to his conversation with Smith concerning the second bid Anderson, a witness for appellees, on direct examination was asked the following questions and gave the following answers:

"Q. What did Mr. Smith say after the last bid was submitted? A. Mr. Smith and I worked with the bids, and when the bids were accepted, he did say he wanted to talk to them about the colors.

\* \* \* \* \* \*

"Q. What did Mr. Smith say when this new bid was offered to him? A. He and I agreed on that as being the low bid.

"Q. What else was said, if anything? A. I don't remember. I talked to him over the telephone, and we were talking about the bid, and I don't remember anything else. We both agreed that it was the low bid, and I told him that these boys were good painters and I thought they would do a good job."

In compliance with Smith's suggestion or request made to Anderson over the telephone on Saturday, July 12, 1952, which message was conveyed to them, the appellees reported to the job site on the following Monday morning. Anderson had not advised appellees that there was a general contractor on the job but merely told them that the house which was to be painted belonged to Dr. Brown.

The first conversation which appellees had with the architect was on the day they reported on the job when "he told us what all he wanted done, and what colors he wanted used."

From time to time Smith, the architect, gave appellees instructions as to how the job was to be done. Smith was on the job nearly every day and supervised other parts of the construction and according to appellees Smith told them several times in effect that he was having to take over everything and finish the job and that he was going to fire some of the men for loafing.

Dr. and Mrs. Brown came to the job site frequently and at their request appellees repainted one room and made a few other changes.

Appellees were not advised by anyone prior ' to the time they completed their work that they would have to look to Mrs. Brooks for their money.

According to the appellee Oldham, the architect a few days before the painting job was finished told him that Dr. Brown was going to finish the job and he would have to pay for it.

■ The foregoing statement of the evidence is that version upon which appellees rely to sustain the holdings of the trial court to the effect that appellees made a contract with the architect Smith, and that in making that contract Smith was acting within the line and scope of his authority as agent of the appellants. We have not set out the conflicts in the evidence, for the testimony was taken orally before the trial court, who saw and heard the witnesses. Notwithstanding the trial was in equity, the trial court's findings of fact are like unto the verdict of a jury, presumptively correct. Webb v. Griffin, 243 Ala. 468, 10 So.2d 458, and cases cited; Channell v. Channell, 257 Ala. 85, 57 So.2d 549; Wilson v. Williams, 257 Ala. 445, 59 So.2d 616.

■ But the trial court's conclusions of law drawn from the facts found from the evidence are not subject to the rule of presumption which obtains respecting the findings of fact. Robert G. Lassiter & Co. v. Nixon, 218 Ala. 484, 119 So. 17; Turner v. Turner, 251 Ala. 295, 37 So.2d 186. If the trial court took an erroneous view of the law as applied to the facts, the rule of presumption does not obtain. Murphree v. Hanson, 197 Ala. 246, 72 So. 437. We are impressed that such is the condition here as to the holding that Smith had the authority to enter into a contract with appellees to paint the Brown residence, aside from any question as to whether the evidence was sufficient to show that any such contract was made by Smith. We are inclined to the view that it was Anderson upon whom the appellees relied and he had no authority to bind the appellants.

There was no evidence that Smith was an agent for appellants with authority to enter into a contract on their behalf with appellees. He was an architect whose principal duties were the general supervision and direction of the work. The terms of his employment did not include the making of contracts on behalf of appellant for the doing of any work on the residence, all of which had been contracted to be done by the general contractor, Brooks.

■ In our opinion there was never any express or implied contract between appellants and appellees.

The fact that appellants knew that appellees were working on the job and gave instructions as to how some of the work was to be done does not show a ratification of any unauthorized acts of the architect, if there were any such acts on his part on which appellees relied. Appellants had a contract with a general contractor to build and paint the residence for a certain amount and appellees' presence on the job site was entirely in keeping with that contract. Nor can we agree that the statement which appellees say Dr. Brown made to them (denied by Dr. Brown) after they had completed their work to the effect that "he (Brown) would see that we got our money" can be said to constitute a ratification of any contract made by Smith. We think this statement, when considered with the other testimony given by appellees, showed beyond doubt that Dr. Brown, if he made any statement, said no more than that he would try to help appellees secure their pay from Mrs. Brooks.

We have given this record our most careful consideration and we are constrained to hold the decree appealed from is erroneous and should be reversed. It is so ordered. Our holding here finds support in the case of Harrigan & Reid Co. v. Hudson, 291 Mich. 478, 289 N.W. 222.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.