238 So.2d 177

Farris Wilkerson BENDALL

v.

The HOME INDEMNITY COMPANY, a Corp.

8 Div. 269.

Supreme Court of Alabama.

June 25, 1970.

Hopper & Hornsby, Huntsville, for appellant.

Ford, Caldwell, Ford & Payne, and W. Stanley Rodgers, Huntsville, for appellee.

**148**

COLEMAN, Justice.

One of the respondents, to a bill for declaratory relief, appeals from the final decree, wherein the court declared that an automobile liability insurance policy is void and that the insurer is not liable to defend the named insured, or the other defendants, in an action brought against them by appellant, or to pay any judgment which appellant may recover in the action. The reason for the trial court's holding is a finding that the named insured had no insurable interest in the liability coverage of the policy.

The complainant is a corporation, which is· authorized to write automobile liability insurance policies. Complainant will sometimes be referred to as insurer.

There are four respondents. Two of them are H. O. Davis, Jr., and his wife, Susie Randolph Davis, both of whom are over the age of twenty-one years. A third respondent is Wanda Faye Randolph McCutcheon, who is a married woman and is twenty years old. She was not married at the time the policy was issued. Wanda is the sister of the respondent, Mrs. Davis. The fourth respondent is Farris Wilkerson Bendall who is over the age of twenty-one years. Bendall is the appellant. The other respondents have been cited to join in the appeal but have filed no brief.

In paragraph 4 of the bill, complainant alleges that it ". . . . entered into a contract of automobile liability, medical payments, comprehensive, and collision insurance with the Respondent Susie Ran-

dolph Davis, who is the wife of H. O. Davis, Jr. and is designated in the declarations of said policy as Mrs. H. O. Davis, Jr., to extend for a period of one year, beginning August 17, 1963, and expiring August 17, 1964. Said policy of insurance declares that Mrs. H. O. Davis, Jr. is the named insured. . . . ." Complainant further avers that the policy declares that the description of the "owned automobile" is a " '1959 Ford 2 Dr. . . . .' " identified by a stated motor number.

In paragraph 5, complainant avers that by the policy provisions, insurer agreed to pay on behalf of insured, subject to terms of the policy, all sums insured shall become legally obligated to pay as damages because of bodily injury sustained by any person and property damage arising out of ". . . . the ownership, maintenance or use of the owned automobile . . . .," and to defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the policy. The policy further provides that the insureds under the policy, with respect to the owned automobile, are the named insured and any resident of the same household and any other person using such automobile with permission of the named insured.

In paragraph 6, complainant avers that the policy defines "owned automobile" as the automobile ". . . . described in this policy for which a specific premium charge indicates that coverage is afforded . . . ."

In paragraph 8, complainant avers that, at time of issuance of the policy and at all times thereafter, the named insured, Mrs. Davis, was not the owner of the automobile described in the policy and that the respondent Wanda Faye McCutcheon was the owner, having purchased the automobile from Dan C. Long in August, 1963.

In paragraph 9, complainant avers that the named insured represented and warranted to complainant that the named insured was the owner of the described automobile when she was not the owner, and

that the misrepresentation or warranty was made with actual intent to deceive or increased the risk of loss.

In paragraph 10, complainant avers that on July 1, 1964, while respondent Wanda Faye Randolph McCutcheon was operating the described automobile, she was involved in an automobile accident with the respondent Bendall.

In paragraph 11, complainant avers that appellant, Bendall, is plaintiff in an action he has brought against the other respondents, Wanda Faye and Mr. and Mrs. Davis, and that said action arose out of the July 1, 1964 accident.

In paragraphs 12 and 13, complainant avers that there is subsisting an actual controversy between the parties on which substantial property rights are dependent, and that complainant is entitled to a decree declaring rights and duties of the parties under the policy.

Complainant prays for a declaration that the policy is void and that complainant is not liable to defend appellant's action against the other respondents or to pay any judgment rendered against them in that action.

Respondents Wanda Faye and Mr. and Mrs. Davis answered the original bill and admitted its allegations except those of paragraphs 8, 9, 12, and 13, which they denied. In their answer to paragraphs 8 and 9, they also averred that no false representations were made but further that complainant was fully aware of the true ownership of the described automobile.

In his separate answer, appellant admitted the allegations of paragraphs 1, 2, 3, 10, 11, 12, and 13 of the original bill. As to paragraphs 4, 5, 6, 7, 8, and 9, appellant answered that he did not have sufficient knowledge to admit or deny the allegations therein.

Complainant filed an amendment to the bill which made the following changes in it:

Paragraph 9 was amended so as to allege that ". . . . Susie Randolph Davis, H. O. Davis, Jr., or Wanda Faye McCutcheon . . . ." misrepresented that the named insured was the owner of the automobile;

The amendment added paragraph 9–A wherein complainant alleged that the named insured, Mrs. H. O. Davis, Jr., had no insurable interest in the described automobile at time of issuance of policy or thereafter;

Paragraph 10–A was added, wherein complainant avers that at the time of the accident, Wanda Faye was operating the automobile without permission of the named insured.

The three respondents, Wanda Faye and Mr. and Mrs. Davis, ". . . . for answer to the complaint as amended say that they deny the averments thereof."

For answer to the amended complaint, appellant says:

"1. That Respondent does not have sufficient knowledge to admit or deny the allegations and averments of matters contained in the amended complaint."

After a hearing ore tenus, the court rendered the decree appealed from, in which findings and opinion are set out as follows:

"Upon consideration of same the Court finds as follows: That on the 17th day of August, 1963, the Complainant entered into a contract of automobile liability insurance with the Respondent Mrs. H. O. Davis, Jr., also known as Susie Randloph Davis, said policy being for a period beginning August 17, 1963, and expiring August 17, 1964, and said policy was renewed for a period extending from August 17, 1964, to August 17, 1965. Said policy covered the 1959 Ford 2-door automobile described in the original bill of complaint. This Ford automobile covered by the policy of liability insurance was purchased by the Respondent Wanda Faye McCutcheon, was paid for by her and the premiums on the insurance policy were also paid by her. Title to the car was at all times in the Respondent Wanda Faye McCutcheon and she was the registered owner and at no time after she purchased the car was the title thereto in the Respond-

ent, Mrs. H. O. Davis, Jr., or her husband, H. O. Davis, Jr., nor did they claim any interest therein. At the time the Ford automobile was purchased by Wanda Faye McCutcheon a chattel mortgage on said automobile securing a promissory note in the sum of Six Hundred Ninety-Eight and 75/100 ($698.75) Dollars payable to the American National Bank of Bridgeport, Alabama was signed by Mrs. H. O. Davis, Jr., and her husband H. O. Davis, Jr. The president of the American National Bank of Bridgeport, Alabama, who loaned the money on the note and Chattel mortgage also represented the Complainant insurance company and issued the liability insurance policy to Mrs. H. O. Davis, Jr., on the automobile described in the chattel mortgage. He also issued the renewal policy. The policy of insurance came into the possession of the Respondent Wanda Faye McCutcheon shortly after it was issued. On the 1st day of July, 1964, the Respondent Wanda Faye McCutcheon was involved in an automobile accident with the Respondent Farris Wilkerson Bendall while she was operating the Ford automobile described in the policy of insurance issued to Mrs. H. O. Davis, Jr. At the time of said accident the Respondent Wanda Faye McCutcheon was not on any business for the Respondent Mrs. H. O. Davis, Jr., (Susie Randolph Davis) but was on her way from the place where she worked to the place where she lived. The Respondent Wanda Faye McCutcheon knew that the policy of insurance on the automobile was issued in the name of her sister, Mrs. H. O. Davis, Jr., but Mrs. Davis denies having any knowledge that the policy was issued in her name until after the automobile accident and the suit by the Respondent Farris Wilkerson Bendall.

"The Court is of the opinion that the Respondent Mrs. H. O. Davis, Jr., had no insurable interest in the automobile described in the policy of insurance issued in her name nor were the circumstances of the ownership of the car by the Respondent Wanda Faye McCutcheon such that the Respondent Mrs. H. O. Davis, Jr. would be legally responsible for any damages resulting from its use by Wanda Faye McCutcheon at the time of the accident on the 1st day of July, 1964, and the policy of liability insurance issued to Mrs. H. O. Davis, Jr., upon said motor vehicle is invalid and unenforceable. (Ocean Accident & Guarantee Co. v. Bear, 125 So. 676, 220 Ala. 491; Rogers v. Lumberman's Mutual Casualty Co., 124 So.2d 70, 271 Ala. 348; 44 C.J.S. Insurance, Par. 198, page 896; Annotation: 1 ALR3d 1193; 7 Am.Jur. 2d Par. 13, page 307)."

Appellant has made ten assignments of error and purports to argue eight of them in brief. His argument is in two parts. In the first part he argues in support of five assignments, and, in the second part, in support of three assignments.

### ONE.

Assignment 4 appears to express what appellant is contending in the first part of his argument, to wit: that the court erred in finding that Mrs. H. O. Davis, Jr., the named insured, ". . . . had no insurable interest in the automobile described in the policy of insurance."

In support of Assignment 4, appellant asserts that the named insured, under the circumstances shown by the evidence, possessed such an interest in the automobile that she had an insurable interest under the liability coverage of the policy.

Some years ago this court had occasion to consider the matter of insurable interest under an automobile liability policy. The court said:

"It is the law that liability insurance, like other forms of insurance, must be supported by an insurable interest in the insured. An insurable interest, even in policies involving property loss, is widely different from a 'sole and unconditional ownership,' sometimes made a warranty in fire policies and the like. ' "Whoever . . . . may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the

preservation of the subject-matter of insurance, whether that advantage inures to him personally or as the representative of the rights or interests of another, has an insurable interest." (Citations Omitted)' American Ins. Co. v. Newberry, 215 Ala. 587, 112 So. 195, 196; May on Insurance, § 80. Even a warranty stipulating for 'sole and unconditional ownership' is not breached by the want of the naked legal title. If the insured alone suffers the loss insured against, this is sufficient. (Citation Omitted)

"But an automobile liability insurance policy does not cover property loss on the part of the insured owner, as in fire or theft policies. 'Legal liability' for injury to persons or property of others resulting from the 'ownership, maintenance or use' of the car is coverage of this policy. That is the risk or hazard which is assumed by the insurance carrier, and for which the 'assured' is indemnified.

"If the 'assured' has such abiding interest in the use of the car in his business that he may become legally liable to others for injuries resulting from its operation, he has a beneficial interest, an insurable interest. (Citations Omitted)" Ocean Accident & Guarantee Corp. v. Bear, 220 Ala. 491, 495, 125 So. 676, 679.

To like effect see: 7 Am.Jur.2d 307, Automobile Insurance, § 13; 1 A.L.R.3d 1193; and 44 C.J.S. Insurance § 198, p. 896. In Blashfield Automobile Law and Practice, Third Edition, Vol. 7, § 291.4, pages 164 and 165, the writer says:

"With respect to liability insurance, an insurable interest may exist apart from ownership of the automobile. The character of liability insurance is quite different from insurance against damage to, or loss of, the property insured, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the damage to, or loss of, the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend on his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable.

". . . . . . . . . ."

■ The instant question is: Does the evidence support a finding that Mrs. Davis, the named insured, was not primarily liable for injury to persons or property that might arise out of operation of the described automobile? If the evidence supports such a finding, the court was correct in deciding that the named insured had no insurable interest which would support the liability coverage of the policy.

Mrs. Davis herself testified that she had never owned a 1959 Ford automobile; that Wanda has owned the described automobile; that Wanda purchased it and paid for it; that the car has never been used by Wanda to further any business of Mrs. Davis; that Mrs. Davis has used the car "Half a dozen times, maybe," always with Wanda's permission; that Wanda has never asked Mrs. Davis' permission to use the car; that Mrs. Davis has never limited or attempted to limit Wanda's use of the automobile; that Mrs. Davis has never purchased license plates for the car in her name; that when Wanda paid the sellers for the car, they gave her the old tag receipt and wrote on the back "Sold to Wanda Faye Randolph."

Under these circumstances we are of opinion that the evidence supports a finding that Mrs. Davis, the named insured, did not have such a relation to her sister, Wanda, or the car so that Mrs. Davis was primarily liable for injury to persons or property that might arise out of operation of the car. Clearly, Wanda was not in anywise the agent or employee of Mrs. Davis in operation of the car; the license plate was not issued in the name of Mrs. Davis or trans-

ferred to her. We find nothing to show that Mrs. Davis had such abiding interest in the use of the car in her business, or otherwise, that she might become legally liable to others for injuries resulting from its operation.

■■ Mrs. Davis, as signer of the note and mortgage, became liable for payment of the debt to the bank in case of Wanda's failure to pay the debt. If Wanda had failed to pay, and Mrs. Davis had paid the debt, then she would probably have been subrogated to the rights of the mortgagee in and to the automobile as security for the debt; Title 9, §§ 78, 87, Code 1940; Reese v. Mackentepe, 224 Ala. 372, 140 So. 550; and it might be correctly argued that, in her capacity as a surety or guarantor, Mrs. Davis had an insurable interest in the automobile and its continued existence which will support an insurance contract against damage to or loss of the car by fire, theft, or collision as appears to have been provided in the comprehensive and collision coverages D and E in the instant policy. In 48 Columbia Law Review 1162, at page 1171, the writer says:

". . . . A guarantor of a secured obligation, if held liable, would be subrogated to the lien against the secured property, and so he has been held to have an insurable interest in that property," citing Waring v. Loder, 53 N.Y. 581, which appears to support the writer's statement. "But an automobile liability insurance policy does not cover property loss on the part of the insured owner, as in fire or theft policies." *Ocean*, supra. Neither, as we see it, does an interest in the continued existence of the automobile free from damage, standing alone, constitute an insurable interest in the risk of loss which may result from liability for injury to the person or property of others resulting from operation of the automobile when the named insured is not shown to be liable for injury which may result from operation of the automobile. We are of opinion that the named insured's interest in the continued existence of the automobile, free from damage to it, standing alone as it does here, is not an insurable interest in the liability coverage of the policy.

Appellant says in brief that the policy was a combination policy covering medical payments, comprehensive, collision, and liability insurance. This appears to be true. The premium statement in the insurance certificate shows that a separate charge was made for each of the separate coverages. It further appears that the insurer had "honored the collision coverage" and had already paid for repair of the insured automobile following the accident of July 1, 1964. Appellant says also:

". . . . There is no question about whether or not, in this instance, the named insured . . . . had an insurable interest in the other parts of the policy such as comprehensive, collision, etc., in that she stood to suffer financial loss directly if the automobile was destroyed. . . . ."

Appellant says, however:

". . . . The effect of the decree is that one can have an insurable interest sufficient to sustain one part of the policy and at the same time have an insufficient insurable interest to sustain another part. Such a conclusion is unconscionable."

Appellant cites no authority to support this contention. Appellee states as a proposition of law that:

"A policy of automobile insurance with coverages for liability, collision, comprehensive, etc., is a severable contract."; and cites Lumbermen's Insurance Co. v. Heiner, 74 Ariz. 152, 245 P.2d 415; and Kosanic v. Preferred Automobile Insurance Co., 314 Mich. 18, 22 N.W.2d 55.

In Hanover Fire Ins. Co. v. Crawford, 121 Ala. 258, 25 So. 912, this court considered the severability of three coverages of a fire insurance policy and affirmed a judgment allowing insured to recover the

value of two subjects covered by the policy but denied recovery for the third subject. The court said:

"It does not necessarily follow that because all the items insured are covered by one policy, that a breach of a condition subsequent in the policy will avoid it as to all the items or subjects covered. . . . ." (121 Ala. at 260, 25 So. at 912–913)

■ We hold it is not unconscionable in the instant case to allow payment for damage to the automobile resulting from collision, and to deny coverage under the liability portion of the instant policy where the named insured had no insurable interest in the subject matter of the liability coverage. Reversible error is not shown as to Assignments 1, 4, 6, 9, and 10.

We have carefully examined all authorities cited by appellant, especially Truck Insurance Exchange v. Hanson, 42 Wash. 2d 256, 254 P.2d 494, wherein the court found that a father did have an insurable interest in a liability policy on a truck purchased by his minor son. The court said: ". . . . The contingency against which the father is insured under the terms of the policy, is liability to third persons arising out of the ownership, maintenance or use of the truck. . . . ." (42 Wash.2d at 257, 254 P.2d at 495) The authorities relied on by appellant do not appear to be contrary to our holding in the instant case.

### TWO.

■ In part two of argument, appellant argues in support of three assignments of error in which he asserts that the court erred:

". . . . in finding that the appellee entered into a contract of automobile liability insurance with Mrs. H. O. Davis, Jr. . . . ."; and

". . . . in failing to find that the Appellee had a contract of liability insurance with Respondent Wanda Faye McCutcheon, formerly known as Wanda Faye Randolph."

The evidence shows that in August, 1963, Wanda was unmarried and under the age of twenty-one years. She desired to buy an automobile and to borrow the money to do so. She went to a bank and talked with the bank's president, F. W. Carr, Jr., who managed the bank and also operated an insurance agency.

Carr testified to the following effect. He represented the appellee. He operated his insurance agency in the bank and did not have a separate office for his insurance business.

On or about August 17, 1963, he made a loan to the respondents, Mr. and Mrs. Davis. The loan is evidenced by a note for $698.75, payable $58.23 a month, secured by the described Ford automobile, and signed by Mr. and Mrs. Davis. Carr filled out the handwritten portion of the note except a line at the bottom "where it says, 'Due' . . . ."

The note was introduced into evidence and shows that Wanda signed her name on the back of the note.

On August 10, 1963, Carr had made a loan to Mr. Davis for $650.00 or § 651.00, without security. The August 10 note was repaid a week later on the 17th.

A few days prior to August 10, Carr had had a conversation with Wanda. She asked Carr would he help finance her purchase of a car. Because she was under 21, he suggested that it would be necessary for someone of age to make the loan, purchasing the car for her. Carr testified as follows:

"Q  Do you recall on August 10, 1963, at the time Mr. Davis made a loan, in the amount of §650.00, whether or not Mrs. McCutcheon was present at that time?

"A  I don't remember.

**154**

"Q Do you recall whether or not at that time any discussion was had concerning the purchase of this automobile?

"A Yes, he knew he was making—not this particuar automobile, but he was making the loan to get money to buy a car and, as best I can remember, he didn't know— he might have known what make or maybe he didn't know, at least he didn't know the motor number so I wasn't able to complete the data at that time and he made a temporary note with the understanding that a permanent note would be made when a complete description of the car was known.

"Q At that time, was there any discussion of insurance, that is, on August 10, 1963?

"A No, there was nothing to insure.

"Q And, if I understand you, on August 17, 1963, Mr. Davis came back to the bank, is that correct?

"A I can't remember for sure which one came.

"Q You recall whether or not Mrs. Davis came to the bank?

"A I don't remember who came to the bank. The record shows one or the other or both of them came, but I don't recall.

"Q When you say the record, is that the note marked Complainant's Exhibit 1?

"A Yes, sir, the note and liability record or ledger.

"Q Prior to the time that the note was executed, had the subject of insurance been discussed with you be any of the parties, that is, Mr. and Mrs. Davis or Mrs. Mc-Cutcheon?

"A Not that I recall. Of course, it is customary when you are borrowing money on a car for it to be insured, but I don't remember specifically that subject being mentioned in this case.

"· · · · · · · · ·

"Q Now, subsequent to the time this note was executed, was there a discussion of insurance? Was there a discussion between you and any of the parties involved?

"A I am quite certain there must have been, because I issued an insurance policy.

"Q Do you recall with whom you discussed the subject of insurance?

"A I think it was with Wanda but I am not absolutely sure.

"Q Do you recall whether or not at that time, any statements were made to you concerning the ownership of this automobile?

"A I don't recall any specific statements, no, sir.

"Q Was a policy of insurance issued through your office on that occasion?

"A Yes."
On cross-examination, he testified further:

"Q Mrs. Davis never told you she was buying an automobile, did she?

"A I don't remember if she did.

"Q And Mr. Davis never just told you that he was buying an automobile, did he?

"A One of the other of them told me they were buying—

"Q And you say one of the two of them told you they were buying this car?

"A Yes, sir.

"Q That they themselves were buying it?

"A As best I can remember.

"Q But you had talked to Wanda Faye about buying it?

"A Yes, sir.

"Q And you knew she was a minor and told her—

"A That the sister would have to buy it or some adult would have to buy it.

"Q Are you stating that it is your opinion that Mr. and Mrs. Davis were, in fact,—

"MR. FORD: We object to that.

"THE COURT: I sustain. He can ask what was said.

"Q What did they say to you? What did Mr. Davis tell you?

"A I don't remember the conversation.

"Q What did Mrs. Davis tell you?

"A I don't remember.

"Q She didn't tell you anything, did she?

"A I don't remember the conversation. I talked to one of them or both of them. I don't remember.

"Q And you cannot tell us a single word Mr. Davis told you about this transaction?

"A Well, unless he said—

"Q Do you remember Mr. or Mrs. Randolph telling you—

"MR. FORD: If your Honor please, let him finish the statement he was about to make.

"THE COURT: All right.

"A Of course, you know a person wouldn't walk in a bank and hand me a note and say nothing. I don't remember which one came in but I am certain they said, 'Here is the note for the car. I am buying it.'

"MR. CAMPBELL: We object to his speculation.

"A Well, I guess I'll not have to answer. I certainly don't remember two and a half years ago what was said, but there was a conversation because nobody would walk in and hand you a note and say nothing."

Wanda testified that at the time she was in the bank; apparently August 17, 1963; she had a discussion with Carr about the insurance; that Carr filled out the certificate of insurance at that time; that she knew the certificate was being made out in the name of Mrs. H. O. Davis, Jr.; that from August 17, 1963, she had the certificate in her possession; that she purchased the car from Long on August 19, 1963, and had the license tag transferred into her name; that title to the car has never been in her sister's name.

After being shown her pre-trial deposition, Wanda testified that she did show the certificate to her sister as best she can recall.

Wanda testified that she is not sure whether at any time she told Carr that title to the automobile was in her name. She testified:

"Q And to your best recollection, at this time it is true you have never told Mr. Carr that title to this automobile was obtained in your name?

"A Yes, sir."

She also testified that she never told Carr that Mr. and Mrs. Davis were planning to buy the automobile.

There are conflicts in the evidence as to what was said to Carr with respect to who was buying the automobile. It may be that conflicting inferences can be drawn as to whether appellee entered into an insurance contract with the name insured, but that issue was for the trial court, sitting without a jury, to decide. We are not persuaded that his finding is plainly and palpably wrong.

As noted above, complainant alleged in paragraph 4 of the bill that complainant entered into a contract of liability insurance with the named insured. In their answer to the original bill, Mr. and Mrs. Davis and Wanda admitted the allegations of paragraph 4.

Appellant has not shown reversible error as asserted in Assignments 2, 3, and 5.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, BLOODWORTH and McCALL, JJ., concur.