248 So.2d 717

**EMPLOYERS NATIONAL INSURANCE COMPANY, a Corporation,**

v.

**Walter Cleveland HOLLIMAN, Jr., et al.**

**6 Div. 799, 799X.**

Supreme Court of Alabama.

May 27, 1971.

Rehearings Denied June 17, 1971.

Phelps & Owens, Tuscaloosa, for appellant.

Roberts & Davidson, Tuscaloosa, for appellee Phoenix Insurance Co.

Turner & Turner, Tuscaloosa, for appellee Abbie E. Stuart.

BLOODWORTH, Justice.

This is an appeal from a final decree rendered in a declaratory judgment proceeding in equity instituted by the Employers National Insurance Company to determine whether a policy of automobile liability insurance which it issued to respondent, Robert P. Sellers, the named insured, was in full force and effect at the time of an accident.

The automobile purportedly covered by the liability policy, was being operated by respondent, Walter C. Holliman, Jr., at the time of the accident and resulted in injuries to respondent, Mrs. Abbie Stuart. Also joined as respondent is The Phoenix Insurance Company, the uninsured motorist insurance carrier for Mrs. Stuart. A cross-bill was filed by Mrs. Stuart against Phoenix seeking a determination that she is entitled to coverage under the uninsured motorist provisions of her policy with Phoenix. Phoenix's demurrer to the cross-bill was sustained by the trial court. The case was heard by a jury with its findings being formulated as answers to interrogatories submitted to it.

Employers takes this appeal from the trial court's decree finding that the liability policy issued by Employers was in full force and effect at the time of the automobile accident. A cross-appeal has been filed by Mrs. Stuart, assigning as error the action of the trial court in sustaining the demurrer to her cross-bill.

The primary question before us is whether Sellers (the named insured) possessed an insurable interest in the automobile at the time of the accident sufficient to support the liability insurance policy.

We have concluded that no such insurable interest existed; consequently, the trial court's decision must be reversed. Likewise, we conclude that there was reversible error in the trial court's action in sustaining demurrer to Mrs. Stuart's cross-bill. In this posture of the case, we need not consider other grounds assigned as error.

The evidence adduced at the trial indicated that Sellers (the named insured) agreed to assist a friend, Walter C. Holliman, Sr. (sometimes referred to as the "principal operator" or "Holliman, Sr."), in purchasing an automobile. A car was selected by Holliman, Sr., and purchased in March 1967 with Sellers signing a promissory note for the purchase price. The bill of sale and license tag registration were issued in the name of Sellers. Holliman, Sr., took possession of the car, garaged it at his home, and made all payments on the note. In October 1967 Sellers applied for, and secured, an automobile liability insurance policy on the automobile through the Alabama Assigned Risk Plan, the policy being issued in his name by Employers. In his application for insurance, Sellers represented that he was the operator of the car 90% of the time and that David C. Holliman (a son of Holliman, Sr.) operated the car 10% of the time. The evidence indicates that Holliman, Sr., paid all of the premiums on this policy. In November 1967, the license tag registration which originally had been issued in Sellers's name, was transferred by him to Mary Holliman, the wife of Holliman, Sr. On September 30, 1968, while being operated by Walter Holliman, Jr. (a son of Holliman, Sr.), the automobile collided with a car owned by Mrs. Stuart, in which she was riding as a passenger, resulting in her injuries.

After Mrs. Stuart instituted suit against Walter Holliman, Jr. for personal injuries, Employers initiated this declaratory judgment action seeking a determination that the policy was not in full force and effect at the time of the accident and praying that it be relieved from defending Mrs. Stuart's suit and from paying any final judgment rendered therein.

At the conclusion of the trial eight interrogatories were submitted to the jury and were answered as follows:

"JURY VERDICT

"1. Did the Respondent, Robert Patrick Sellers, represent to the Complainant, Employers National Insurance Company, that he was the registered owner of the Comet automobile involved at the time of the procurement of the liability insurance policy issued by Employers National Insurance Company? (X) Yes. ( ) No.

"/s/ William L. Britt
Foreman

"2. Did the Respondent, Robert Patrick Sellers, own the Comet automobile involved at the time the policy of insurance of Employers National Insurance Company was acquired? (X) Yes. ( ) No.

"/s/ William L. Britt
Foreman

"3. If Respondent, Robert Patrick Sellers, owned the Comet automobile involved at the time the policy was acquired, had he transferred ownership to Walter Cleveland Holliman, prior to the accident? ( ) Yes. (X) No.

"/s/ William L. Britt
Foreman

"4. If there was a misrepresentation made, was it made by the Respondent, Robert Patrick Sellers, with actual intent to deceive Complainant, Employers National Insurance Company? ( ) Yes. (X) No.

"/s/ William L. Britt
Foreman

"5. If there was a misrepresentation made by the Respondent, Robert Patrick Sellers, did the matter misrepresented increase the risk of loss? ( ) Yes. (X) No.

"/s/ William L. Britt
Foreman

"6. Did Employers National Insurance Company waive its right to deny coverage on the Comet automobile involved on account of any misrepresentation of ownership? (X) Yes. ( ) No.

"/s/ William L. Britt
Foreman

"7. If you are reasonably satisfied from the evidence that there was a misrepresentation of fact in the application for liability insurance, are you further reasonably satisfied that this misrepresentation was waived by the Employers National Insurance Company? (X) Yes. ( ) No.

"/s/ William L. Britt
Foreman

"8. At the time of the issuance and receipt by Robert Patrick Sellers of the policy of insurance issued by Employers National Insurance Company, was Robert Patrick Sellers the sole owner of the 1967 Comet automobile? (X) Yes. ( ) No.

"/s/ William L. Britt
Foreman"

The trial court confirmed and adopted the jury's findings in its final decree and declared that on the date of the accident Sellers had an insurable interest in the automobile.

On this appeal, Employers argues that the trial court's finding of an insurable interest in Sellers on the date of the accident was erroneous. Employers points to our recent decision in Bendall v. Home Indemnity Company, 286 Ala. 146, 238 So. 2d 177 (1970), rendered subsequent to the trial court's decree in this case, as being dispositive of this issue.

Appellee Phoenix (Mrs. Stuart's insurer) replies that the facts support the trial court's conclusion, and that the Bendall decision is not governing because of factual distinctions. Furthermore, Phoenix contends that there was a "material variance" between the pleadings and proof in the trial of the cause.

We think that our decision in Bendall does present a factual situation analogous to this case. In Bendall, the named insured Mrs. Davis, and her husband, had signed a promissory note for an automobile purchased by her sister, Wanda McCutcheon. The bill of sale and license tag registration for the car were issued to Wanda, and Wanda made all payments on the note. An automobile liability insurance policy on the car was issued by the Home Indemnity Company to Mrs. Davis. Wanda was involved in an accident while driving the car, after which Home Indemnity Company instituted a declaratory judgment proceeding seeking a declaration that the policy was

void. On appeal, this court affirmed the trial court's finding that the named insured (Mrs. Davis) had no insurable interest in the automobile sufficient to support the liability coverage of the policy since the named insured was not primarily liable for injury to persons or property arising out of the automobile's operation.

In discussing the nature of an insurable interest under an automobile liability policy, we quoted extensively from Ocean Accident & Guarantee Corporation v. Bear, 220 Ala. 491, 125 So. 676, where it was observed:

> " 'If the "assured" has such abiding interest in the use of the car in his business that he may become legally liable to others for injuries resulting from its operation, he has a beneficial interest, an insurable interest. (Citations Omitted)' " Bendall v. Home Indemnity Company, supra.

Likewise in *Bendall*, we quoted from Blashfield Automobile Law and Practice, Third Edition, Vol. 7, § 291.4, at pages 164 and 165:

> " 'With respect to liability insurance, an insurable interest may exist apart from ownership of the automobile. The character of liability insurance is quite different from insurance against damage to, or loss of, the property insured, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the damage to, or loss of, the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and *the right of the insured to recover does not depend on his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable.*' " [Emphasis supplied]

After recounting the pertinent facts, our court concluded in *Bendall* that it found

"nothing to show that Mrs. Davis had such abiding interest in the use of the car in her business, or otherwise, that she might become legally liable to others for injuries resulting from its operation."

We think the *Bendall* decision and the cases cited therein clearly recognize that the question of what constitutes an insurable interest under an automobile liability policy involves a determination as to whether the named insured would be liable for injury to persons or property which might arise out of the operation of the described automobile. Applying this test to the case at bar, we conclude that the facts do not sustain a finding of an insurable interest in Sellers.

A comparison between the similar and dissimilar facts in *Bendall* and the present case may better illustrate our conclusion.

In each case we find the following similar facts: (1) The note to finance the purchase of the car was signed by the named insured; (2) the insurance policy was issued in the name of the obligor on the note; (3) the named insured used the car occasionally but never claimed any interest therein; (4) the named insured always asked permission of the principal operator to use the car; (5) the named insured never limited the principal operator's use of the car; (6) the principal operator never asked the named insured's permission to use the car; (7) payments on the note were always made by the principal operator; (8) the car was garaged at the home of the principal operator; (9) the insurance premiums were paid by the principal operator; (10) the insurance policy was kept by the principal operator.

The notable dissimilar fact in the two cases is that in *Bendall* the automobile was purchased by, and the license tag issued to, the principal operator (Wanda), while in the present case (although the automobile was selected by Holliman, Sr.) the bill of sale and tag were issued to the obligor on the note (Sellers). However, we think this dissimilarity loses its significance, if any,

when it is considered that in the instant case, Sellers transferred the license tag registration to Mrs. Holliman prior to the accident. In our opinion, the facts clearly demonstrate that Sellers did not have, at the time of the accident, such a relationship to Mr. or Mrs. Holliman, Sr. so that Sellers would be liable for injury to persons or property which might arise out of the operation of the car.

■ Nonetheless, Phoenix contends that Sellers did possess an insurable interest and cites in support of this theory Title 36, § 74(46) (b) (c), § 74(55) (Motor Vehicle Safety-Responsibility Act). The argument advanced is that these sections require the Director of Public Safety to suspend the license of each operator and all registrations of each owner of a motor vehicle involved in an accident resulting in personal injury or property damage if no proof of financial responsibility is furnished. Since it is suggested that Sellers could have his registration on the automobile involved in the accident suspended, as well as those of other automobiles owned by him, in this respect he did possess an insurable interest. The answer to this contention is self-evident. Sellers was not at the time of the accident the registered owner of the vehicle involved in the accident so that he would risk the loss of registration. We reiterate our previous conclusion that the test of an "insurable interest" in an automobile liability policy involves a determination as to whether the named insured would be liable for injury to persons or property arising out of the operation of the insured automobile.

■ Phoenix further contends that there was a "material variance" between the pleading and proof offered by Employers. It is argued that Employers alleged in its bill of complaint that Sellers transferred title to the automobile to Holliman, Sr. while the evidence tended to indicate that the license tag was in fact transferred to Mrs. Holliman. We do not agree that this was a "material variance." The relevant fact is that the license tag was transferred from Sellers's name; this the bill alleged and this the proof showed. The fact that the registration of the automobile was not in Sellers's name is material, the fact as to whom the registration was listed is not material, in determining whether Sellers had an insurable interest. Additionally, we have said that it is "well settled that in equity it is not necessary to accurately prove every detail of averment as alleged provided that proof is made of such averments as are essential to the relief sought." Bobo v. City of Florence, 260 Ala. 239, 69 So.2d 463; Food Centers, Inc. v. Davis, 286 Ala. 629, 244 So.2d 576.

Nor, do we believe that the jury's findings militate against our conclusion. We have carefully examined the questions submitted to the jury. None involved the issue as to whether the named insured, Sellers, had an insurable interest in the automobile at the time of the accident. Rather, this issue was determined by the trial judge after the jury's findings were reached.

Likely, the very able and conscientious trial judge would have reached a different conclusion had our decision in *Bendall* been announced prior to the rendition of his decree.

■ Lastly, Phoenix suggests that the presumption in favor of findings of fact made by a trial judge when the evidence is heard ore tenus and is disputed, precludes our reversal of the decree unless it is determined to be plainly and palpably wrong. But, no such presumption obtains where the trial judge took an erroneous view of the law as applied to the facts. Brown v. Oldham, 263 Ala. 76, 81 So.2d 331 (1955); Pruitt v. Key, 281 Ala. 433, 203 So.2d 450 (1967). We think such is the situation here where the trial court made a finding of an insurable interest in Sellers. Therefore, the presumption suggested has no application.

We next turn to a consideration of the propriety of the trial court's action in sus-

taining Phoenix's demurrer to the cross-bill filed by Mrs. Stuart.

In discussing the nature of a demurrer filed in a declaratory judgment action, Mr. Justice Goodwyn writing for the court in Moore v. City of Fairhope, 275 Ala. 506, 507, 156 So.2d 366, 367 (1963), observed:

"* * * If this were the usual equity case, it would be appropriate to test the merits of the bill by demurrer, but in a declaratory judgment proceeding the only question ordinarily determined on demurrer is whether the bill states the substance of a bona fide justiciable controversy which should be settled. The well-established rule is that if the bill shows such a controversy, it is sufficient to withstand a demurrer directed to it. In such situation, the demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree. * * *"

Here, though the trial court sustained demurrer to the cross-bill, it made no reference to any of the grounds of demurrer addressed to a specific aspect. In such an instance, on appeal we consider only those grounds addressed to the cross-bill as a whole. Clark v. Case, 267 Ala. 229, 100 So.2d 747 (1957); City of Talladega v. Ellison, 262 Ala. 449, 79 So.2d 551 (1955). Thus, the trial court's ruling sustaining the demurrer should be reversed if any aspect of the cross-bill is free from the demurrer interposed. Clark v. Case, supra; Morgan Plan Co. v. Vellianitis, 270 Ala. 102, 116 So.2d 600 (1959).

The grounds of demurrer addressed to the bill as a whole claim, in substance, that the bill does not state a justiciable controversy because it seeks a determination which is moot or premature, the bill is multifarious, and the bill does not contain equity.

The cross-bill alleges inter alia that Mrs. Stuart was injured in an automobile accident as a proximate consequence of the negligence of Holliman, Jr.; that the automobile being driven by Holliman, Jr., was insured by a liability policy issued by Employers, but that Employers has denied coverage under said policy; that Phoenix had issued to Mrs. Stuart, prior to the accident, uninsured motorist insurance coverage insuring her against loss for bodily injuries sustained as a result of the negligent operation of an uninsured motor vehicle; and, that Phoenix claims that it is not obligated under the terms of its uninsured motorist policy until the liability policy issued by Employers is declared to be null and void. The cross-bill further avers that a justiciable controversy exists between Mrs. Stuart and Phoenix as to whether she is insured, and as to the amount of coverage to which she is entitled under the uninsured motorist provisions of her policy. The cross-bill also seeks a money judgment.

We believe that the allegations of the cross-bill are sufficient to show that a justiciable controversy exists between Mrs. Stuart and Phoenix. It follows then that the trial court erred in sustaining the demurrer to the cross-bill.

To summarize, we hold that the automobile liability policy issued by the Employers National Insurance Company to Robert P. Sellers was not in full force and effect at the time of the accident because the named insured had no insurable interest in the described automobile. We also hold that the demurrer of The Phoenix Insurance Company to Mrs. Stuart's cross-bill should have been overruled because the cross-bill alleged a justiciable controversy between the parties. The decree of the trial court is due to be reversed and remanded for entry of a decree in conformity with this opinion and for further proceedings on the cross-bill.

Reversed and remanded with directions.

HEFLIN, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.