BURCH v. BUSH.

Affirmed.

---

MAGGIE E. BURCH, Administrator, v. J. D. BUSH & COMPANY.

(Filed 23 March, 1921.)

**1. Contracts—Death of Party—Survival of Action—Executors and Administrators.**

Ordinarily a contract made by a person who has since died without performing his obligations thereunder is binding upon his executors and administrators, with exception only when from the nature of the contract it required his personal performance, or from its terms it is ascertained that such was the intention of the parties.

**2. Same—Timber—Lumber.**

A contract to cut standing timber and manufacture it into lumber, according to specifications set out in the written agreement, is not alone such an one as to require the personal performance of the party obligated, and an action thereon survives against his executors and administrators, who must either have it performed or remain liable in damages for its breach.

**3. Same—Breach—Performance Prevented—Quantum Meruit.**

Where the death of a party to a contract does not relieve his estate from liability thereunder, and the other party abandons his contract or will not permit the personal representatives to proceed, it will relieve the personal representatives from this obligation, and permit them to recover as upon a quantum meruit, for the work done or services rendered under the contract by their intestate in his lifetime.

**4. Contracts—Breach—Death of Party—Payments—Mistake—Damages—
Counterclaim.**

   Where, under a contract to cut and manufacture lumber, there is a
   provision for the owner to make partial payments as the work progresses,
   which has been terminated by the death of the other party, it is competent
   for the surviving party to show that he has made the partial payments in
   excess of those required by his contract through his mistake or misappre-
   hension, as a counterclaim in an action thereon by the personal repre-
   sentatives of the deceased party. *Simms v. Vick,* 151 N. C., 78; *Worth
   v. Stewart,* 122 N. C., 258, cited and approved.

APPEAL by defendant from *Kerr, J.,* at August Term, 1920, of
FRANKLIN.

Civil action, brought to recover moneys alleged to have been withheld
on a logging and sawmilling contract.

On 16 December, 1915, plaintiff's intestate entered into a written
contract with the defendant whereby he undertook to cut a certain tract
of standing timber and manufacture the same into lumber as per specifi-
cations set out in the written agreement—the work to be completed
within eighteen months. It was stipulated in the contract that the
cutting and sawing of said timber was to be paid for as the work pro-
gressed, settlements to be made every two weeks; and the defendant was
given the right to reserve and hold back 10 per cent of the amount due
on the lumber delivered as a guarantee for the satisfactory fulfillment of
the contract.

In August, 1916, plaintiff's intestate was accidentally killed at his
sawmill while engaged in carrying out his contract with the defendant.
Plaintiff alleges that at the time of the death of the intestate, the defend-
ant had in its hands the sum of $445.22 as moneys reserved on lumber
manufactured and delivered up to that date. The defendant answered
and alleged that upon a proper accounting between the parties, up to
the date of the death of plaintiff's intestate, it would appear that the
defendant had made overpayments to the amount of $282.19, and asked
for an affirmative judgment against plaintiff for this sum. Later the
defendant filed an amended answer, and set up by way of further defense
and counterclaim that the defendant had suffered damages in the sum
of $1,126.77 as the difference between the contract price and what it
cost the defendant over and above that price to have the remainder of
the timber cut and manufactured into lumber.

His Honor, being of opinion that the contract was personal to plain-
tiff's intestate, and that his death relieved his representatives from
further fulfillment, and also being of opinion that the fortnightly settle-
ments were binding between the parties, excluded evidence which the
defendant proposed to offer on its counterclaims and directed a verdict
in favor of the plaintiff. Defendant excepted and appealed.

*William H. and Thomas W. Ruffin for plaintiff.*
*Willis Smith for defendant.*

STACY, J.   We think his Honor erred in holding, as a matter of law, that the contract in question was personal, and that further performance was not required after the death of plaintiff's intestate.

The general rule is that contracts bind the executor or administrator, though not named therein, and that death does not absolve a man from his engagements.   There is an exception, however, to this general rule, equally well established, that in contracts requiring the continued existence of a given person or thing, a condition is implied that the impossibility of fulfillment, arising out of the death of the person or destruction of the thing, shall excuse the performance.   *Stagg v. Land Co.,* 171 N. C., 583; *Yerrington v. Green,* 7 R. I., 589; *Mendenhall v. Davis,* 21 L. R. A. (N. S.), 914, and note.

The line of demarcation between a personal contract, which is terminated by death, and one which the personal representatives of the deceased are required to fulfill is not very clearly defined.   The reasons for this become obvious and apparent upon a moment's reflection.   Two elements which enter into the making of a contract, namely, the intention and understanding of the parties, are not subject to any fixed standard of "weights and measures."   They are invisible and intangible things, variable with time and place, and undeterminable by any constant or set formula.   Hence, no hard and fast rule can be established for their ascertainment.   To be sure, in the broad outlines, certain contracts are not difficult of classification.   Those of a strictly personal nature, involving particular personal skill or taste, such as a contract of an author to write a book, an artist to paint a picture, a sculptor to carve a piece of statuary, a singer to give a concert, and a promise to marry, are personal contracts and die with the person.   Death makes the performance of such contracts impossible; and, indeed, removes the main object and inducement for the agreement.   Executors and administrators are unable to perform such contracts, and the estate of the deceased cannot be held liable in damages by reason of the failure to complete them.   Ordinarily, contracts not falling under this exception come under the general rule, and death does not excuse performance.   13 C. J., 643, *et seq.*

"The true question is whether the contract, properly construed, requires a continuance of the promised action beyond the lifetime of the promisor.   It is the same question, and is to be answered in the same way, as if the promisor himself were alive for purposes of being sued, but dead for the purposes of performance."   *Drummond v. Crane,* 159 Mass., 577.

On the other hand, the parties, by express terms, may exclude substituted performance. But there is a twilight zone in which, by reason of the ambiguity of some contracts, the intention of the parties must become the determining factor. The facts and circumstances of each particular case should be taken into consideration in determining whether the contract is purely personal in its nature, and therefore terminated by death, or one which the personal representatives can complete as well as the deceased could have done had he lived. As said in *Siler v. Gray,* 86 N. C., 566: "The general rule unquestionably is that the personal representatives of a party are bound to perform all of his contracts, whether specifically named in them or not, or else make compensation for their nonperformance out of his estate. But to this there is the exception, as well established as the rule itself, of all such contracts as require something to be done by the party himself *in person.*"

Assuming such to be the law, whether a given case falls under the general rule or the exception must depend upon the intention of the parties; for, at last, it is in every case purely a question of their understanding and agreement. *Steamboat Co. v. Transportation Co.,* 166 N. C., 582; *R. R. v. R. R.,* 147 N. C., 368.

Viewing the contract between the parties here presented in light of the foregoing principles, we see nothing which would take it out of the general rule. Its terms are clear and unambiguous. It may be performed by the administrator, or he may secure others to do it, as well as the deceased could have done had he not been killed. The parties have agreed unconditionally, and this is the law of contracts voluntarily assumed. *Clancy v. Overman,* 18 N. C., 402.

Of course, where the personal representatives of a deceased are able to do so, and, in good faith, offer to complete the contract, and the other party refuses to accept such offer and declines to permit the personal representatives to proceed, such would relieve them from further performance. They would be entitled, then, to an accounting, and to recover as upon a *quantum meruit. Whitlock v. Lumber Co.,* 145 N. C., 120; *Navigation Co. v. Wilcox,* 52 N. C., 481, and *Buffkin v. Baird,* 73 N. C., 283. Again, the surviving party may abandon the contract and thus forfeit his right to call upon the personal representatives of the other party to continue with the agreement. In such case he could not hold the estate liable for damages occasioned by his own effort to fulfill the contract. *Harwood v. Shoe,* 141 N. C., 161; *Harris v. Wright,* 118 N. C., 422.

The record discloses no evidence, as offered by the defendant, tending to support its first counterclaim relating to alleged overpayments. In the absence of any evidence to support an allegation, the court would be justified in giving a peremptory instruction. But such evidence, if

any, we think, would be competent to show payments made under a misapprehension, or mistake of fact, following the doctrine announced in *Simms v. Vick,* 151 N. C., 78, and *Worth v. Stewart,* 122 N. C., 258.

With the case going back for a new trial, we refrain from further comment, as we do not care to prejudice the rights of the parties prior to a development of all the evidence.

New trial.