The Estate of OLEN SPANN, Dec'd.,
Creed SPANN, Exec'tr. of The Est.
of Olen SPANN, Dec'd. et al *v.*
W. H. KENNEDY & SON, INC.

74-288                    520 S.W. 2d 286

Opinion delivered March 24, 1975

*Coleman, Gantt, Ramsay & Cox,* for appellants.

*Bridges, Young, Matthews & Davis,* for appellee.

LYLE BROWN, Justice. Appellants here, who were defendants below, are the estate of Olen Spann, deceased; Creed Spann, Executor of the Estate of Olen Spann, deceased; Wendle Adcox, John L. Vassaur, and Joe Hickerson. The latter three are tenants of the Spann estate. The appellee here and plaintiff below is W. H. Kennedy & Son, Inc., cottonbrokers. The interpleader is Federal Compress & Warehouse Company.

The principal issue before the chancellor was whether a written contract between a cotton farmer (Olen Spann) and a cotton merchant (Kennedy) is of a personal nature so as to be terminated by death of one of the parties (Spann). The chancellor held that death did not terminate the contract and ordered the interpleader to deliver the cotton to Kennedy & Son, Inc.

Appellants here contend (1) that the court erred in finding the contract between the late Olen Spann and W. H. Kennedy & Son required Olen Spann estate to plant any cotton, and (2) erred in finding that the contract was enforceable against the tenants of the estate of Olen Spann.

The facts are largely undisputed. During his lifetime Olen Spann entered into a contract dated January 30, 1973, for the sale by Spann and the purchase by Kennedy of "all and only those bales of cotton produced and ginned from approximately 375 acres located on the farm owned by Spann". The contract was styled "PURCHASE AGREEMENT 1973-74". Spann died on April 20, 1973 before any cotton had been planted and his son, Creed Spann, Executor, was appointed personal representative of the estate. In due time the executor entered into a lease agreement with Adcox and Vassaur, and they, in turn, sublet a portion of the Spann lands to Joe Hickerson. The cotton was actually produced far in excess of 375 acres referred to in the contract and is now in the possession of Federal Compress & Warehouse Company, the interpleaders here.

We come now to the principal question, that is, whether the executor and his tenants are legally obligated to perform under the contract and deliver the cotton in the warehouse for the use and benefit of appellee, Kennedy & Son, Inc. It should be here stated that the executor was aware of the contract before planting time, and the lessees and their subtenant were aware of the contract before they accepted the agreement to plant and harvest the crop for the executor.

Our attention is first directed to Ark. Stat. Ann. § 62-2410 (Repl. 1971): "Unless a testator shall otherwise direct by his last will and testament, a personal representative shall have authority to continue any business in which his decedent may have been engaged at the time of his death, for a period not exceeding one month following the date of the granting of his letters, without obtaining an order of the court; and if such business be that of conducting farming operations he may so continue the same for a period of three months or until the end of the calendar year in which the death of the decedent occurred, whichever shall be longer." The foregoing statute indicates that the probate law favors the completion of a work contract in force on the death of the testator.

In the field of the subject matter before us we find this statement in 3 Williston on Contracts, § 411: "In the absence

of express agreement to the contrary there will be no such requirement [of personal performance] if the duty is of such character that performance by an agent will be substantially the same thing as performance by the obligor himself. The performance in such a case is indeed in legal contemplation rendered by the original obligor, who is still the party liable if the performance is in any respect incorrect."

Applying the above stated general principle to the facts of this case, we cannot escape the conclusion that the contract between Spann and Kennedy is binding upon Spann's personal representative. First, the evidence reflects that the cotton lands in Jefferson County, particularly in the area of the Spann lands, are some of the best in the mid-south. This creates a situation where there is a demand for good cotton acreage. Second, even though the testimony indicates that confidence is an important factor in the cotton-producer and cotton-merchant relationship, and that Kennedy had this confidence in Spann, the testimony also reflects that there are many other cotton producers living or having interests in the general vicinity of the Spann lands that are competent and reliable growers, including the two tenants of the Spann estate for 1973. J. W. Kennedy, President of W. H. Kennedy & Son, Inc., testified that he had individual contracts with both defendants, Vassaur and Adcox whereby they agreed to sell and he agreed to buy their cotton for the 1973 crop year. The evidence is rather conclusive that, even though the personal representative was not a skilled cotton farmer, he had no difficulty in securing capable and reliable tenants to farm the land and fully and completely comply with the contract his father had made. There is certainly no question raised by the parties to this litigation that the tenants were not thoroughly competent. In fact, they produced more cotton than was called for in the contract with Kennedy.

Of course it is true that the identity of the producer is important to the cotton buyer at the time he enters into the contract to purchase cotton. It is without doubt important, just as it is important to know with whom one is dealing whenever any contract is entered into. It is important that the farm has good land which will produce the quality of cotton contemplated; to know that he has the equipment, or can get

it, to produce the crop; that he is responsible financially and can secure adequate financing; and basically all the considerations that are relevant to any contract. But these considerations do not make it a "personal service" contract. For example, those same considerations were present in the following situations where the contracts were enforced against the estate of the deceased contracting party:

*National Surety Company* v. *George E. Breece Lumber Company*, 60 F. 2d 847 (CCA 10th, 1932) (Contract to carry on logging operation); *Burch* v. *Bush & Co.*, 181 N.C. 125, 106 S.E. 489 (1921) (Contract to cut timber and manufacture it into lumber according to specifications); *Cates* v. *Cates*, 268 Ala. 6, 104 So. 2d 756 (1958) (Contract to haul milk); *In Re Burke's Estate*, 198 Cal. 163, 244 P. 340 (1926); *MacKay* v. *Clark*, 5 Cal. App. 2d 44, 42 P. 2d 341 (1935) (Building contracts); *Whidden* v. *Sunny South Packing Co.*, 162 So. 503 (Fla. 1935) (Planting, cultivating and harvesting citrus fruit); *Calif. Packing Corp.* v. *Lopez*, 279 P. 664 (Cal. 1929) (Asparagus cropping contract).

Further factual evidence that the contract in question was not a contract which could be performed only by Olen Spann, is the fact that the appellee, W. H. Kennedy & Son, Inc., entered into the same type contract with literally hundreds of cotton farmers in the cotton producing areas in Arkansas and Louisiana. The proof is that Kennedy purchased on forward cotton contracts approximately 92,000 acres of cotton production which would represent several hundred contracts. John Tharp, cotton merchant, with Harlow Sanders & Co., Inc., cotton merchant of Pine Bluff, testified that his firm negotiated in the neighborhood of 500 contracts of this type in 1973. Charles E. Hart, president of Hart Cotton Company, Inc., a cotton merchant of Pine Bluff, estimated that his firm was involved in some 700 contracts for the 1973 crop year. It is safe to say, therefore, that cotton merchants in Pine Bluff alone entered into literally thousands of contracts of the very same type as the Kennedy contract for the 1973 cotton crop.

Appellant next argues that if there was a contract between the Spann estate and Kennedy, it does not reach the

tenants of the estate on the lands of Olen Spann. In other words it is argued that the tenants are in no manner bound to make delivery of the cotton. The tenants Adcox, Vassaur and Hickerson, testified, and were corroborated by Creed Spann, that all of them were aware of the Spann-Kennedy contract when they leased the land. The court made specific findings in regard thereto and they are fully supported by the testimony of the named witnesses. The sum and substance of the testimony was that the tenants considered themselves bound by the contract if the estate was bound. Here is what the court said: "In other words, defendants, Adcox, Vassaur and Hickerson, entered into a lease contract with the personal representative with full knowledge of the Spann-Kennedy contract and they agreed to deliver the cotton from the lands to Kennedy if it should be determined that the Spann-Kennedy contract was valid."

Finally, appellant makes this argument: "The second consideration upon which the court might have concluded that the estate of Olen Spann was obligated for cotton grown by its lessees on the estate lands would have to do with the theory of title to the goods contracted for. To some degree, the Uniform Commercial Code bears on this issue."

Appellants cite Ark. Stat. Ann. § 85-2-105, 106, and 107 and conclude from those sections of the UCC "it is apparent that 'growing crops' are goods within the meaning of the Code and are susceptible to contracts for sale".

Also, crops which have not been planted may be included in the definition of "future goods". Ark. Stat. Ann. § 85-2-105 (2) [Add. 1961]; 85-2-501 [Add. 1961]; 2 Anderson, Uniform Commercial Code (2d ed.) 63, Sales, § 2-501:9, 501:10. The only effect in this case, however, would be that the contract, instead of constituting a present sale, would operate as a contract to sell at a future time. Ark. Stat. Ann. § 85-2-105 (2), 106. When a decedent has entered into a contract for sale of personal property which has not been performed, his executor may be compelled to execute a bill of sale pursuant to the terms of the contract. Contractual obligations which survive the death of the obligor are binding on his executor in his representative capacity and enforceable

against the estate, and it is the duty of the executor to carry out such contracts and compliance may be enforced unless they are personal in nature and personal performance by the decedent is of the essence of the contract. 31 AM JUR 2d § 158, Executors and Administrators, § 318; 33 CJS 1168, Executors and Administrators § 189.

Even if the UCC provisions are applied, the issue remains the same, i.e., whether there was a contractual obligation enforceable against his estate. We have said there was.

Affirmed.

HARRIS, C.J., not participating.

HOLT, J., not participating.