PHE, Inc. v. Dolinsky, 2022 NCBC 62.

STATE OF NORTH CAROLINA

ORANGE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22 CVS 517

PHE, INC.,

              Plaintiff,

v.

ALAN M. DOLINSKY, as Executor of
the Estate of Philip D. Harvey,

              Defendant.

**ORDER AND OPINION ON
DEFENDANT'S PARTIAL MOTION
TO DISMISS**

**THIS MATTER** comes before the Court on Defendant's Partial Motion to Dismiss ("Motion to Dismiss" or "Motion," ECF No. 17).

THE COURT, having considered the Motion, the briefs of the parties, the arguments of counsel, and all appropriate matters of record, **CONCLUDES**, for the reasons set forth below, that the Motion should be **GRANTED**.

> *Carruthers & Roth, P.A., by Michael J. Allen, Jack B. Bayliss, Rachel S. Decker, J. Patrick Haywood, and Brandon Kenneth Jones, for Plaintiff PHE, Inc.*
>
> *Poyner Spruill LLP, by Andrew H. Erteschik, Keith H. Johnson, Colin R. McGrath, and N. Cosmo Zinkow, for Defendant Alan M. Dolinsky, as Executor of the Estate of Philip D. Harvey.*

Davis, Judge.

## INTRODUCTION

1.    The Motion presently before the Court raises several novel questions—suitable for a law school exam—regarding (1) who is entitled to sue the executor of an estate on a claim for breach of fiduciary duty; and (2) the circumstances under which the economic loss rule bars such a claim.

## FACTUAL AND PROCEDURAL BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites pertinent facts contained in the Complaint, including those in the documents attached to, referred to, or incorporated by reference in the Complaint that are relevant to the Court's determination of the motion. *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681 (1986); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. Jul. 12, 2017).

3. Plaintiff PHE, Inc. ("PHE") is a North Carolina corporation with its principal place of business in Hillsborough, North Carolina. (Compl. ¶ 1, ECF No. 4.) PHE was incorporated in June 1982. (Compl. ¶ 10.)

4. Defendant Alan M. Dolinsky is the executor of the estate of Philip D. Harvey. Harvey was an initial shareholder of PHE and served as an officer and director of PHE for much of the corporation's existence prior to his death. (Compl. ¶ 11.)

5. On 15 October 2000, Harvey—while serving as the president of PHE— signed an Amended and Restated Shareholders' Agreement (the "Agreement") along with the company's other shareholders. (Compl. Ex. A, ECF No. 4.1.)

6. The recitals to the Agreement stated, in pertinent part, as follows:

B. . . . The Company and Shareholders believe it is in their mutual best interest to preserve the status of the Company as an S Corporation under the [Internal Revenue] Code and to provide for liquidity of the investment upon the occurrence of certain events.

C. The Shareholders and the Company believe it is in their best interest to restrict each Shareholder's right to dispose of any shares of Common Stock now owned or hereafter acquired by any of them (the "Shares") upon the occurrence of (i) an actual or purported transfer of Shares by any Shareholder that would, directly or indirectly, terminate the Company's [ ] S corporation status, (ii) a Shareholder's death, (iii) the disability, retirement or resignation of a Shareholder who is employed by the Company, (iv) the termination, with or without cause, of a Shareholder's employment with the Company, or (v) the voluntary or involuntary sale or disposition of any Shares owned by a Shareholder (collectively, the "**Triggering Events**").

D. The Shareholders and the Company believe it is in their best interest to provide for the redemption or purchase of the Shares when a Triggering Event occurs.

(Agreement, at p. 1.)

7. The Agreement stated that "[u]pon the death of any Shareholder, the Company shall have the obligation to purchase all Shares owned by (a) the Shareholder immediately prior to his or her death or (b) his or her estate." (Agreement, at p. 3.) The Agreement went on to provide additional information regarding how the purchase of such shares would take place. (Agreement, at p. 3.)

8. On 8 August 2018, Harvey executed a Last Will and Testament (the "Will"). (Compl. Ex. B, ECF No. 4.2.) The Will contained the following provision that is pertinent to this lawsuit:

5. **Residuary Estate**. I devise the residue of my estate (my Residuary Estate) to the beneficiaries named in the table below as unrestricted gifts. The following terms and conditions shall apply:

a. **Sale of Stock by Executor**. To the extent that my Residuary Estate consists of stock or similar interests in a corporation or other entity that is governed by stockholder or similar agreements, my Executor is directed to sell such stock or other interest in accordance with those agreements and transfer the net proceeds, including cash and notes to the beneficiaries herein in

satisfaction of this bequest. The Executor may make distribution of the notes and cash to a distributee partially in notes and partially in cash, in divided or undivided interests, either pro rata or by a method other than pro rata among all distributees. This directive is designed to preserve the tax status such corporations or entities may have elected or secured. In particular, my goals are (1) to preserve the public foundation status of DKT International, Inc. and (2) to preserve the S Corporation status of any corporation shares of which are owned by me at the time of my death.

(Will, at p. 2.)

9. On 2 December 2021, Harvey died—leaving his widow as his sole heir. (Compl. ¶¶ 22–23.) At some point thereafter, Dolinsky was appointed as the executor of Harvey's estate (the "Estate"). (Compl. ¶ 3.)

10. Shortly after Harvey's death, PHE began preparations to purchase the 445.516 shares of common capital stock in the company owned by Harvey at the time of his death (the "Harvey Shares"), which PHE believed it was entitled to purchase pursuant to the terms of the Agreement and the Will. (Compl. ¶¶ 21–23.)

11. PHE provided notice to Dolinsky by letter dated 28 December 2021 regarding "PHE's intent to redeem the Harvey Shares in accordance with the Shareholders' Agreement . . . at a closing to occur on March 2, 2022." (Compl. ¶ 23.) PHE alleges that this notice was issued in conformity with the procedure set forth in the Agreement. (Compl. ¶¶ 23–27.)

12. Counsel for Dolinsky sent a letter by certified mail to PHE dated 28 January 2022 stating, among other things, that Dolinsky had not yet been formally appointed as the executor and thus did not have authority to accept notices on behalf of the Estate. (Compl. ¶ 30.) The letter further provided that Dolinsky "was willing

to pursue discussions of the sale of the Harvey Shares upon completion of an appraisal." (Compl. ¶ 30.)

13. Discussions ensued between counsel for PHE and Dolinsky. (Compl. ¶ 31.) On 25 February 2022, counsel for PHE sent a letter via Federal Express to Dolinsky's attorney confirming that officers of PHE intended to be present on 2 March 2022 for the closing as previously referenced in the 28 December 2021 letter. (Compl. ¶ 32.)

14. On 2 March 2022, neither Dolinsky nor any other representative of the Estate attended the closing. (Compl. ¶ 35.) Nevertheless, PHE's officers "executed a promissory note in a principal amount calculated pursuant to the Shareholders' Agreement and the Notice[.]" (Compl. ¶ 34.) PHE alleges that it "was ready, willing, and able to deliver to Defendant the Promissory Note in accordance with . . . the Shareholders' Agreement, and to enter into such other agreements and documents contemplated by the Shareholders' Agreement[.]" (Compl. ¶ 34.)

15. PHE's counsel delivered the promissory note to Dolinsky's attorney, who agreed to hold the note in trust. (Compl. ¶ 37.) PHE alleges, however, that "[t]o date, [Dolinsky] has failed and refused to . . . deliver the Harvey Shares to PHE or to an escrow agent." (Compl. ¶ 38.)

16. PHE filed a Complaint initiating this action on 2 May 2022. (Compl., ECF No. 4.) On 4 May 2022, this case was designated a mandatory complex business case and assigned to the undersigned. (Designation Order, ECF No. 1.)

17. The Complaint contains five claims against Dolinsky:[1] (1) breach of contract; (2) declaratory judgment (seeking an interpretation of the Agreement); (3) breach of fiduciary duty;[2] (4) declaratory judgment (seeking an interpretation of the Will); and (5) declaratory judgment (seeking a determination regarding whether the Estate is entitled to additional distributions from PHE). (Compl. ¶¶ 44–78.)

18. On 30 June 2022, Defendant filed the present Motion seeking the dismissal of PHE's claims for breach of fiduciary duty and for a declaratory judgment regarding the terms of the Will. (Def.'s Partial Mot. Dismiss, ECF No. 17.)

19. The Court held a hearing in this matter on 15 September 2022. The Motion is now ripe for resolution.

**LEGAL STANDARD**

20. A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of the complaint by presenting the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some recognized legal theory." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994) (cleaned up).

21. In deciding a Rule 12(b)(6) motion, the Court construes the complaint liberally and accepts all well-pled factual allegations as true. *Krawiec v. Manly*, 370 N.C. 602, 606 (2018); *Laster v. Francis*, 199 N.C. App. 572, 577 (2009). The Court,

---

[1]  Dolinsky is named as the defendant solely in his capacity as executor of the Estate.

[2] In its Complaint, PHE labels this claim as "Breach of Duty under Will." However, based on the Court's review of the Complaint in its entirety as well as the arguments of counsel, the Court construes this claim as one for breach of fiduciary duty.

however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up). Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider any such attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.*

22. "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

23. As noted above, the claims asserted in PHE's Complaint can be divided into two categories—will-based claims and contract-based claims. In the Motion, Dolinsky does not seek the dismissal of PHE's *contract-based* claims—that is, its claims that Dolinsky has breached the Agreement and that a declaratory judgment is necessary to construe the parties' respective rights and obligations contained therein.

24.     Instead, the present Motion is based entirely on the *will-based* claims. In those claims, PHE contends that Section 5(a) of the Will imposed a distinct legal duty (a fiduciary duty) upon Dolinsky—separate and apart from his contractual duty stemming from the Agreement—to sell the Harvey Shares back to the company and that it is entitled to declaratory relief in the form of a ruling that its interpretation of the Will is correct.  Dolinsky, conversely, argues that Section 5(a) of the Will has no independent legal effect with regard to PHE and serves, at most, merely to reiterate the fact that the parties' rights are governed by the terms of the Agreement.  The Court must therefore evaluate the validity of PHE's will-based claims.

## I.     Breach of Fiduciary Duty

25.     In its claim for breach of fiduciary duty, PHE relies upon Section 5(a) of the Will in asserting that as the executor of the Estate, Dolinsky owes PHE both a statutory fiduciary duty under N.C.G.S. § 28A-13-2, as well as a general duty "to comply with the clear terms of the Will and to sell the Harvey Shares to PHE in accordance with the Will and the terms of the Shareholders' Agreement."  (Compl. ¶ 62.)  PHE argues that Dolinsky breached these alleged duties "by rejecting and failing to follow the clear terms of the Will, by failing and refusing to acknowledge or proceed with Defendant's obligation to sell, and PHE's right to purchase, the Harvey Shares in accordance with the terms of the Shareholders' Agreement, and by failing to deliver the Harvey Shares."  (Compl. ¶ 63.)

26.     In response, Dolinsky contends that PHE's claim for breach of fiduciary duty must be dismissed for two reasons: (a) PHE is not within the class of persons

legally authorized to bring such a claim against the Estate as it is, in essence, a creditor of the Estate rather than a beneficiary; and (b) the economic loss rule bars such a tort claim because the parties' obligations are governed exclusively by a *contract*—the Agreement—and, as a result, no separate recovery in tort is legally permissible.

27.    The question of whether PHE falls within the class of persons sufficiently interested in the Estate to assert a breach of fiduciary duty claim is both an interesting one and an issue of first impression in North Carolina.  Nevertheless, the Court need not resolve it because regardless of the answer to that question, PHE's tort claim is foreclosed by the economic loss rule.

28.    "The economic loss rule, as it has developed in North Carolina, generally bars recovery in tort for damages arising out of a breach of contract[.]"  *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 159 (2017).  This Court has summarized the rule as follows:

> The economic loss rule "denote[s] limitations on the recovery in tort when a contract exists between the parties that defines the standard of conduct and which the courts believe should set the measure of recovery." *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *47-48 (N.C. Super. Ct. Nov. 3, 2011).  This rule exists because "the open-ended nature of tort damages should not distort bargained-for contractual terms." *Artistic Southern Inc. v. Lund*, 2015 NCBC LEXIS 113, at *25 (N.C. Super. Ct. Dec. 9, 2015).

*USConnect, LLC v. Sprout Retail, Inc.*, 2017 NCBC LEXIS 37, *13–14 (N.C. Super. Ct. Apr. 21, 2017).

29.    However, an action in tort that arises from a breach of contract is permissible if the tort claim "identif[ies] a duty separate and distinct from [its]

contractual obligations." *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *8 (N.C. Super. Ct. Jan. 5, 2016); *see also Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *48 (N.C. Super. Ct. Nov. 3, 2011).  Such a tort claim is viable as long as the plaintiff alleges a duty owed to it by the defendant that is separate and distinct from any duty owed under a contract between the parties.  *Artistic S., Inc. v. Lund*, 2015 NCBC LEXIS 113, at *23 (N.C. Super. Ct. Dec. 9, 2015).

30.     This Court previously applied the economic loss rule in dismissing a tort claim for breach of fiduciary duty in *Perry v. Frigi-Temp Frigeration, Inc.*, 2020 NCBC LEXIS 100 (N.C. Super. Ct. Sep. 3, 2020).  In *Perry*, the plaintiff was the former chief executive officer of a company who was terminated from that position shortly before the company was bought by another corporation.  The plaintiff alleged that he was dismissed, in part, by the company and its majority shareholder in order to avoid paying a bonus due to him based on the terms of an "Independent Contractor Agreement."  *Id*. at *1–2.  In his complaint, the plaintiff asserted several causes of action, including claims for breach of fiduciary duty and breach of contract.  *Id*. at *3–4.  Relying upon the economic loss rule, the defendants sought dismissal of the plaintiff's breach of fiduciary duty claim, contending that this claim could not be separated from his breach of contract claim.  *Id*. at *15.  In response, the plaintiff argued that his fiduciary duty claim was based not on any contractual agreement, but rather upon the duties inherent in the relationship between majority and minority shareholders.  *Id*. at *15–16.  Applying the economic loss rule, this Court stated the following:

Perry seeks to avoid the application of the economic loss rule here by purporting to base his claims on the fiduciary duty that Gray owed, as the Company's majority shareholder, to Perry, as the Company's minority shareholder, and not on his duties under the Agreement. (Pl.'s Br. Opp'n 13–16.) While it is certainly true that a contracting party may have fiduciary duties to his counterparty that are separate and distinct from his contractual duties and thus may be enforceable in tort . . . Perry's difficulty here is that the injury he has allegedly suffered, and the damages he seeks to recover for his breach of fiduciary duty and constructive fraud claims, are created by and available only under Paragraph 17 of the Agreement.

Our courts have made clear that the economic loss rule precludes a tort action "when the injury resulting from the breach [of an alleged duty] is damage to the subject matter of the contract.". . .

The subject matter of the parties' Agreement includes Perry's alleged right to receive the Bonus, and the injury Perry claims he has suffered is injury to that right caused by Defendants' failure to pay the Bonus. Under North Carolina law, Perry's remedy thus exists, if it exists at all, as a matter of contract, not through tort. Because Perry seeks here to recover in tort "damage to the subject matter of the [parties' Agreement,]" i.e., the Bonus, the Court concludes that to the extent Perry's claims for breach of fiduciary duty and constructive fraud seek recovery of the Bonus, the economic loss rule requires their dismissal.

*Id.* at ¶¶ 17–19 (footnote omitted).

31.     Critically, PHE does not dispute the fact that the Agreement is a valid and enforceable contract to which Harvey was a party. It also does not contest the fact that upon his death his estate was required to comply with its terms. Nor could such an argument have properly been made. Our Court of Appeals squarely addressed that issue in *Shutt v. Butner*, 62 N.C. App. 701 (1983):

Nor were the defendant's obligations under the contract terminated by the death of the other contracting party. Few contracts are terminated by death in the absence of explicit provisions therein to the contrary. This is because all know that unexpected and untimely death is a constant possibility and are deemed to make their contracts in light thereof, and also because most contracts can be satisfactorily performed

by personal representatives. 17A C.J.S., Contracts § 465. The general rule is that "contracts bind the executor or administrator, though not named therein, and that death does not absolve a man from his engagements." *Burch v. Bush*, 181 N.C. 125, 127, 106 S.E. 489, 490 (1921). But in this instance it is unnecessary to resort to the general rule, because the parties themselves, leaving nothing to chance or the law's operation, had their agreement to provide that:

> . . . this Judgment shall be enforceable against the parties, their personal representatives, heirs and assigns.

Having so contracted, the defendant is bound thereby.

*Id*. at 704–05.

32.     Similarly, in the present case, Section 16.10 of the Agreement expressly states that its provisions

> shall be binding not only upon the parties hereto, but also upon their heirs, personal representatives, successors or assigns, and the parties hereby agree for themselves and their heirs, personal representatives, successors or assigns, to execute all instruments and to perform all acts which may be necessary or proper to carry out the purposes and intent of this Agreement.

(Agreement, at p. 14.)

33.     PHE nevertheless seeks to avoid application of the economic loss rule in this case by arguing that Dolinsky "is subject to a standalone and distinct duty to sell the Harvey Shares, which duty arises under the Will[,]" and that such a duty is "not governed directly by nor [does it] arise under the [Shareholders' Agreement]." (Pl.'s Resp. Brief in Opp'n. to Def.'s Mot. Dismiss, ECF No. 26.)

34.     But this argument fails to withstand scrutiny. Although the duty of an executor to carry out a testator's directives as set forth in his will is, of course, one that is recognized under North Carolina law, it is hard to imagine a clearer example than the present action of a case in which the parties' actual dispute hinges on the

terms of a contract. The essence of PHE's grievance in this case is Dolinsky's alleged failure to comply with the Estate's obligations under the Agreement. On these facts, it simply cannot be said that PHE's will-based breach of fiduciary duty claim is the sort of standalone tort claim that could exist independently from its contractual claim.

35. Nothing in Section 5(a) of the Will changes the legal relationship between the Estate and PHE or alters Dolinsky's obligation, in his capacity as Executor, to fully comply with the Agreement. It would be quite a stretch for the Court to hold—as PHE requests—that Section 5(a) effectively supplements the Agreement and would require Dolinsky to sell the Harvey Shares to PHE *even if* the Court were to ultimately rule that the Agreement itself merely gives the Estate the option of doing so. The language in Section 5(a) falls far short of independently imposing upon the Estate a substantive obligation to sell the Harvey Shares to PHE. Indeed, Section 5(a) does not even mention by name either PHE or the Agreement. To the contrary, this provision of the Will contains only a broad reference to the existence of shareholder agreements generally. Moreover, it directs that any sales of Harvey's shares be conducted "in accordance with those agreements"—thereby recognizing that the terms of any such shareholder agreements would control.

36. Although PHE attempts to rely on several cases from this Court in which the economic loss rule was deemed inapplicable, the Court finds each of those cases to be distinguishable. *See Kixsports, LLC v. Munn*, 2021 NCBC LEXIS 32, at *17–18 (N.C. Super. Ct. Apr. 1, 2021) (concluding that the economic loss rule did not apply

because the operating agreement at issue did not eliminate the statutory duties owed to the plaintiff by the defendant); *Austin v. Regal Inv. Advisors, LLC*, 2018 NCBC LEXIS 3, at *27 (N.C. Super. Ct. Jan. 8, 2018) (holding that the economic loss rule did not bar the plaintiffs' negligence claims as a matter of law where the court found support for the plaintiffs' proposition that the defendant owed a separate duty under the North Carolina Administrative Code); *USConnect,* 2017 NCBC LEXIS 37, at *15 (rejecting application of the economic loss rule where the contract at the center of the dispute had expired and therefore was not in effect when the alleged tortious conduct occurred); *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *21 n.61 (N.C. Super. Ct. Jun. 20, 2016) (finding that the economic loss rule was inapplicable where "there exists issues of fact that create a question as to whether the Separation Agreement is an enforceable contract").

37.     As in *Perry*, the Court concludes that any remedy to which PHE may be entitled is grounded in contract rather than in tort.  Accordingly, Dolinsky's Motion is GRANTED as to PHE's breach of fiduciary duty claim, and this claim is dismissed with prejudice.

## II.     Declaratory Judgment Claim (Fourth Claim for Relief)

38.     Finally, Dolinsky also seeks dismissal of PHE's will-based declaratory judgment claim.[3]   In this claim, PHE requests "a judicial determination and declaration that PHE is an interested person under the Estate, and that the Will

---

[3] Dolinsky has not moved to dismiss PHE's other declaratory judgment claims designated as the second and fifth claims for relief in the Complaint.

requires Defendant to sell the Harvey Shares to PHE in accordance with the terms of the Shareholders' Agreement." (Compl. ¶ 70.)

39.    The Declaratory Judgment Act authorizes North Carolina courts "to declare rights, status, and other legal relations" in cases involving actual disputes between adverse parties. N.C.G.S. § 1-253; *see Adams v. N.C. Dep't of Nat. and Econ. Res.*, 295 N.C. 683, 703 (1978). Our Supreme Court has explained that "[a]n actual controversy between the parties is a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act in order to 'preserve inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status, or other legal relations.' " *Id.* (quoting *Lide v. Mears*, 231 N.C. 111, 118 (1949)). Thus, a "Superior Court has jurisdiction to render a declaratory judgment only when the pleadings and evidence disclose the existence of a genuine controversy between the parties to the action, arising out of conflicting contentions as to their respective legal rights and liabilities under a . . . will, contract, [or] statute[.]" *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 287 (1964).

40.    The Supreme Court has made clear that "a trial court [may], in the exercise of its discretion . . . decline a request for declaratory relief when (1) the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue; or (2) the requested declaration will not terminate or afford relief from the uncertainty, insecurity, or controversy giving rise to the proceeding." *Augur v. Augur*, 356 N.C. 582, 588–589 (2002).

41.     The Court agrees with Dolinsky that dismissal of PHE's will-based declaratory judgment claim is proper. PHE has failed to convince the Court that there is any actual dispute in this case over the proper interpretation of the Will that would make a declaratory judgment on that subject appropriate. As discussed at length above, the real issue in this case concerns the proper interpretation of the Agreement with regard to the disposition of Harvey's PHE shares. Once again, the Court is unable to discern any legally permissible construction of the Will that would alter the contractual duties that exist based on the terms of the Agreement.

42.     Therefore, PHE's fourth claim for relief is dismissed without prejudice for lack of subject matter jurisdiction. *See Button v. Level Four Orthotics & Prosthetics, Inc.*, 2020 NCBC LEXIS 30, at *21 (N.C. Super. Ct. Mar. 13, 2020) (dismissing a request for declaratory judgment because the plaintiff failed to show the existence of an actual controversy as required by the Declaratory Judgment Act); *Lumbee Enter. Dev., Inc., v. Lumbee Reg'l Dev. Ass'n.*, 2020 NCBC LEXIS 61, at *23–27 (N.C. Super. Ct. May 8, 2020) (granting motion for summary judgment where the declaratory relief requested would not terminate the uncertainty or controversy among the parties as to the ultimate issue).

**CONCLUSION**

**THEREFORE, IT IS ORDERED** as follows:

1. Defendant's motion to dismiss PHE's breach of fiduciary duty claim is **GRANTED**, and this claim is **DISMISSED** with prejudice.

2. Defendant's motion to dismiss Plaintiff's fourth claim for relief is **GRANTED**, and this claim is **DISMISSED** without prejudice.

   SO ORDERED, this the 19th day of October, 2022.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases
